Veron ATCHLEY, Petitioner,

v.

Lawrence E. WILSON, Warden, California State Prison, San Quentin, California, Respondent.

No. 46688.

United States District Court
N. D. California.

Jan. 19, 1968.

Thomas C. Lynch, Atty. Gen. of California, San Francisco, Cal., for respondent.

Veron Atchley, in pro. per.

Charles Legge, Edwin W. Green, Bronson, Bronson & McKinnon, San Francisco, Cal., for petitioner.

## MEMORANDUM OF DECISION ON PETITION FOR HABEAS CORPUS

PECKHAM, District Judge.

Veron Atchley brings this habeas corpus petition pursuant to 28 U.S.C. § 2241 et seq., to secure his release from an allegedly unconstitutional confinement in San Quentin State Prison. After having pleaded not guilty, he was convicted of first degree murder on January 7, 1959, and was sentenced to death. The California Supreme Court affirmed the conviction and sentence, People v. Atchley, 53 Cal.2d 160, 346 P. 2d 764 (1959). A writ of certiorari was granted but subsequently dismissed by the United States Supreme Court as having been improvidently granted. Atchley v. California, 366 U.S. 207, 81 S.Ct. 1051, 6 L.Ed.2d 233 (1961). Atchley's sentence was commuted to life imprisonment without possibility of parole in 1961, and was further commuted to allow parole in 1966.

In this application, petitioner primarily raises two constitutional claims. First, he argues that the procedure employed by the trial court for determining the voluntariness of petitioner's confession failed to satisfy federal constitutional standards. Secondly, he argues that the tape-recorded confession which was extracted from him was involuntary, and hence, inadmissible. At his trial and on his automatic appeal petitioner challenged the admissibility of his tape-recorded statements. Further, he alleges that all the grounds raised in this petition were presented in a habeas corpus petition to the California Supreme Court, which was denied on January 18, 1967, apparently without opinion. Under the rule announced in Castro v. Klinger, 373 F.2d 847 (9th Cir. 1967), petitioner has satisfied the exhaustion of remedies requirement of 28 U.S.C. § 2254 (1958), as amended 28 U. S.C. § 2254 (1966).

On March 9, 1967, an Order to Show Cause was issued by this Court. After respondent filed his return and a hearing was held, it was determined that counsel should be appointed and that a second non-evidentiary hearing should be held after further briefing by the parties. On September 28, 1967, the further hearing was held.

The facts upon which petitioner's claims are based can be briefly summarized. At Atchley's trial for the murder of his wife, the prosecution proposed to introduce a tape recording of a conversation between Atchley and one Ray J. Travers. Defense counsel requested, and the Court granted, a preliminary examination in chambers to permit defense counsel to state his objections to the introduction of the tape-recording. In chambers, the objection was made, among others, that Atchley's statements on the tape "were not given freely and voluntarily * * *." (Reporter's Transcript, Vol. IV, p. 942, 1.5 hereafter cited thusly: R.T. IV, 942, 1.5.) Defense counsel further objected because the defendant, when making the statements, was unaware that the conversation was being secretly recorded, or that Travers had been requested to elicit Atchley's statements by the Undersheriff, Officer Spann; the objection was also raised that "the defendant was tricked into making a declaration to his insurance broker [Travers] which he felt was a private and confidential communication to his broker concerning a policy of life insurance on the decedent; that it was not given to be transcribed or taken down." (R.T. IV, 942, 1. 24—943, 1.3.) The tape-recording was then played, in which Atchley admitted arming himself, concealing himself, watching and waiting for his wife, surprising her and firing several shots while the gun was in his hand.

At the outset of the recording, Travers told Atchley that "I won't write none of this down. I can remember. I don't want nothing on paper." (R.T. IV, 951, 1. 5–8; 953, 1. 4–9; 954, 1. 21–23.) Among other things, Atchley stated that from the time of his arrest at approximately 4:00 A.M. on August 3, until the conversation with Travers around noon

on August 5, he had been kept "pretty well occupied * * * pretty well isolated." (R.T. IV, 956, 1. 23–24.) Further, Atchley indicated that he had been trying to get an attorney before the conversation with Travers. (R.T. IV, 1. 4–5.)

After the tape was finished and while still in chambers, defense counsel frequently renewed his objection that the statements elicited by Travers from Atchley constituted a confession and that they were not freely and voluntarily given. In response, the prosecutor stated that he would lay a foundation showing that the statements were freely and voluntarily given. The judge ruled that the statements on the tape "may approach the nature of a confession and that therefore before the tape is used I think the same foundation should be laid as is used for the introduction of a confession." (R.T. IV, 982, 1. 1–3; 986, 1. 5–11.)

With this in mind, two later rulings of the trial judge in chambers are significant. Defendant raised the objection that the tape contained a communication which Atchley intended to be private between himself and Travers, made for the definite purpose of helping the decedent's children, one of whom Atchley claimed was his, to recover under the decedent's life insurance policy. The trial judge ruled that such evidence would go to the weight but not to the admissibility of the tape (R.T. IV, 990, 1. 4–6). Secondly, defense counsel asked to recall the Undersheriff, Officer Spann, who allegedly had asked Travers to elicit the confession from Atchley, for cross-examination. The reason given was that "since this other matter has come up [presumably the voluntariness issue] * * * it would be extremely prejudicial to the defendant's case if I were not permitted to ask him before he [the prosecution] put the insurance agent on the stand * * *" (R.T.

IV, 992, 1. 21–26). The Court apparently ruled that the cross examination would be limited to matters covered on direct examination (see R.T. IV, 994, 1. 5–8). The officer had not been examined in connection with the tape recording when he had been called earlier by the prosecution.

In the presence of the jury, at the hearing on the issue of voluntariness,[1] Travers testified that he had visited the jail in the morning of August 5 and conversed with Atchley at Atchley's request. After that conversation, Travers admitted that he was asked by the undersheriff to engage Atchley in a second conversation which would be recorded and that he complied with the request. Travers further testified that he offered no threat, promise or inducement to Atchley.

On cross examination, Travers acknowledged that he was a good friend and the insurance agent of Atchley. At this time defense counsel indicated that Atchley was unable to read or write, although these facts were not clearly established until later in the trial when Atchley took the stand in his own defense. It was also at this time that the trial judge in effect ruled that no constitutionally impermissible inducement could have occurred from the fact that Atchley had made his statements to Travers in the belief that Travers, in his capacity as insurance agent, was seeking information in order to protect the rights as beneficiaries of the decedent's children (R.T. IV, 1005, 1. 13–15). Moreover, when defense counsel offered to establish that Atchley had told Travers that he had requested a lawyer on numerous occasions from the sheriff's department and that he had not been permitted to talk with a lawyer prior to that time, the prosecution objected on the ground that "whether the man wanted a lawyer, had a lawyer or intended to get one has nothing to do

---

1. An examination of the Reporter's Transcript clearly shows that both counsel and the court understood the purpose of the hearing was to determine whether the tape-recorded confession had been voluntarily given. (See R.T. IV, 1002, 1. 18–21; 1003, 1. 8–12, 1. 22–24; 1004, 1. 20–22; 1005, 1. 8–12, 1. 13–15.)

with the freeness and voluntariness of the statement." (R.T. IV, 1009, 1. 22–25.) Sustaining the objection the trial judge ruled that whether Atchley "did or did not have a lawyer has no bearing on this particular point." (R.T. IV, 1010, 1. 19–22.) Further, the trial judge sustained another objection to questions relating to the conversation between the undersheriff and Travers on the ground that what the undersheriff Spann "may or may or not have said about this man, about what he wanted him to bring out on the tape. * * * " was irrelevant (R.T. IV, 1012, 1. 13–19). Finally, the Court sustained an objection on the grounds of irrelevance to the question whether or not Atchley knew that the conversation was being recorded. The tape was then played before the jury, and admitted into evidence, after the trial judge noted the objections of the defendant and stated that the court had ruled upon them.[2]

After the tape had been played and admitted, Travers was further cross examined by defense counsel. At this time he admitted that Atchley didn't have a lawyer and was trying to obtain one at the time he had made the statements which were recorded. Travers further admitted that he had been a deputy sheriff for three and one-half years, with experience in "homicides and all felonies", and that in questioning Atchley, he had followed a "general routine of asking questions, as a line of interrogation * * * " (R.T. IV, 1027, 1. 25—1028, 1.2).

In each ruling discussed above, the trial court excluded relevant and perhaps crucial evidence on the issue of whether the confession was voluntary. Evidence that the confession was extracted while the accused was attempting to get a lawyer, had been refused a lawyer, or merely had communicated to the police his desire to have a lawyer clearly bears on whether the confession was voluntary or whether the will of the accused was overborne. Reck v. Pate, 367 U.S. 433, 81 S.Ct. 1541, 6 L.Ed.2d 948 (1961); Culombe v. Connecticut, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961).[3] Moreover, evidence that Travers feigned sympathy for his friend, Atchley, deceived him about his motives in order to extract a confession certainly would be material to the issue. Spano v. People of State of New York, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959); Leyra v. Denno, 347 U.S. 556, 74 S.Ct. 716, 98 L.Ed. 948 (1954). For the same reasons, the evidence relating to whether or not Atchley knew that the tape was being recorded would also be material. Further, the testimony of Officer Spann as to what Spann said to Travers before the tape-recorded confession was elicited could be material to a determination of voluntariness based on all the circumstances. To have limited the proposed cross examination of Spann to those matters covered in direct examination may have deprived the judge of certain facts necessary to make a competent finding. Finally, evidence relating to Atchley's mental condition, whether he was able to read or write and the extent of his education would all bear on the voluntariness of the confession. Culombe v. Connecticut, *supra*; Reck v. Pate, *supra*, Davis v. North Carolina, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966).[4] While the trial court did

---

2. The tape was also relied upon heavily by the prosecution to impeach petitioner's testimony when he took the stand in his own behalf. (See R.T. VI, 1368, 1642, 1671, 1678–82, 1725–26, and 1758.)

3. Later in the trial, Atchley testified that prior to the confession, on some ten occasions, he had told the officers he wanted an attorney R.T. VI, 1502, 1. 21—1503, 1. 2; VI, 1677, 1. 21–24).

4. Later in the trial, when Atchley took the stand in his own defense, he stated that he had attended school for two or three months a year through the third grade, and that he was unable to read or write R.T. V, 1416, 1. 8–17). He testified that immediately after his arrest, while being questioned by the local officers, he "was in the highest shock" and on the stand testified that

not directly exclude evidence of this nature, the prosecution objected to one question along this line on the ground that whether the defendant could read or write didn't bear on the voluntariness of the confession and in the ensuing colloquy the response to that question was never obtained. (See R.T. IV, 1002, 1. 12–1004, 1. 25.)

All this is not to say that this Court is presently able to say that the confession was involuntary. However, had the trial court developed the facts discussed above and other facts,[5] resolved the conflicts and discrepancies in the evidence, and engaged in the necessary close scrutiny of the totality of the circumstances under which the confession was extracted, (Gallegos v. Colorado, 370 U.S. 49, 52, 55, 82 S.Ct. 1209, 8 L.Ed.2d 325 (1962)), then the trial court could have more competently determined whether Atchley's will was overborne.

In light of the above discussion, it is the conclusion of this Court that the trial court did not reliably determine whether Atchley's confession was voluntary or involuntary. The hearing on voluntariness was not "fully adequate to insure a reliable and clear-cut determination of the voluntariness of the confession", as required by Jackson v. Denno, 378 U.S. 368, at 391, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). In that case, the Supreme Court held that the trial court procedure employed did not afford a reliable determination of the voluntariness of the confession offered in evidence, did not adequately protect Jackson's right to be free of a conviction based upon a coerced confession, and therefore would not withstand attack under the Due Process Clause of the Fourteenth Amendment. The Court therein stated, at 380, 84 S.Ct. at 1783, that "[a] defendant objecting to the admission of a confession is entitled to a fair hearing in which both the underlying factual issues and the voluntariness of his confession are actually and reliably determined." The Court stated that the procedure to be followed must be "fully adequate to insure a reliable and clear-cut determination of the voluntariness of the confession, including the resolution of disputed facts upon which the voluntariness issue may depend." (378 U.S. at 391, 84 S.Ct. at 1788.) [6]

he was unable to remember what he had told the officers during these periods of questioning. (R.T. VI, 1614, 1. 1; 1615, 1. 4–5; 1616, 1. 8–10; 1624, 1. 1–2; 1627, 1. 1–2.) At another point Atchley testified that during that period immediately after his arrest, "I might have said anything to get them to quit questioning me and let me go to bed and sleep." (R.T. VI, 1693, 1. 9–12.) Finally, when Atchley's sentence was commuted to life imprisonment without possibility of parole in 1961, the Order of Commutation notes that Atchley possessed an I.Q. of 60 and had suffered damage to his brain and central nervous system from a blow received in 1956. (Ex. A to Petition for Habeas Corpus.) Atchley's testimony in his own defense, particularly when cross examined by the prosecutor, reveals a subnormal level of intelligence and understanding.

5. For example, there is no indication from the record, nor was it a subject of inquiry during the hearing on voluntariness whether the police advised Atchley of his right to remain silent, that his answers might be used against him, or of his right respecting counsel. In Davis v. North Carolina, 384 U.S. 737, at 740, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966) the Supreme Court stated that such information "is a significant factor in considering the voluntariness of statements later made."

6. There appears to be no question that the rule enunciated in Jackson v. Denno is to be applied retroactively; that is, to convictions, such as Atchley's, which had become "final" in the sense that the ordinary methods of review, such as appeal or certiorari had already become exhausted or the right to utilize them had expired through passage of time, before Jackson was decided. Linkletter v. Walker, 381 U.S. 618, 639, n. 20, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965); Johnson v. New Jersey, 384 U.S. 719, 727–728, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966); Pinto v. Pierce, 389 U.S. 31, 88 S.Ct. 192, 19 L.Ed.2d 31 (1967); see Annot., "Retroactive or Merely Prospective Operation of New Rule Adopted by Court in Overruling Precedent—Federal Cases", 14 L.Ed.2d 992, 1011–12 (1966).

Assuming that the trial court made an independent determination that the confession was voluntary[7] as required by Jackson v. Denno, *supra,* the fact that the hearing on the issue of voluntariness was held in front of the jury would raise no constitutional question. Pinto v. Pierce, 389 U.S. 31, 88 S.Ct. 192, 19 L.Ed.2d 31 (1967). However, for the reasons given above, the procedure used and the standards followed by the trial court did not satisfy the requirements of Jackson v. Denno, *supra*; see Mitchell v. Stephens, 353 F.2d 129 (8th Cir. 1965). As the Supreme Court stated in Boles v. Stevenson, 379 U.S. 43, at 45, 85 S.Ct. 174, at 176, 13 L.Ed.2d 109 (1964), in a case following Jackson v. Denno, petitioner "is entitled to a hearing in the state courts under appropriate procedures and standards designed to insure a full and adequate resolution of this issue". Accordingly, the writ of habeas corpus is granted unless the State, within a reasonable time, affords Atchley either a hearing on the issue of voluntariness which is consistent with the requirements of due process or a new trial, failing which Atchley is entitled to his release.[8] If it should be determined on a subsequent hearing that Atchley's confession was involuntary, then the State would be required to afford Atchley a new trial. Jackson v. Denno, 378 U.S. 368, 394, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). Because of this holding, the Court need not decide the other issues advanced by petitioner in his application for the writ of habeas corpus.

So ordered.

7. The record here is confusing as to exactly when the trial court made its determination that the confession was voluntary. Certainly that determination does not appear with the "unmistakable clarity" required by Sims v. Georgia, 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593, at 598 (1967). Moreover, the record is clouded by the uncertainty in the trial court's statements as to whether Atchley's statements constituted a confession or merely admissions. This confusion is heightened by the fact that no instructions were given to the jury regarding the confession or the jury's role in viewing the confession. Prior to the adoption of the new Evidence Code by California, effective January 1, 1967, the failure to give appropriate instruc-
tions regarding the jury's role in viewing confessions constituted reversible error. See People v. Bevins, 54 Cal.2d 71, 76–77, 4 Cal.Rptr. 504, 351 P.2d 776 (1960).

8. Alternatively, this Court concludes that, as has been shown, the trial court followed an erroneous standard of law in determining that the confession was voluntary. The remedy set forth above is still appropriate. See Jackson v. Denno, 378 U.S. 368, 394 n. 22, 84 S.Ct. 1774 (1964). Under either theory, the Court is of the opinion that petitioner has successfully rebutted the presumption contained in 28 U.S.C. § 2254(d), as amended by Public Law 89–711, 80 Stat. 1104 (1966).