PROCUNIER, DIRECTOR, CALIFORNIA DEPART-
MENT OF CORRECTIONS *v.* ATCHLEY

No. 44.   Argued November 18, 1970—Decided January 19, 1971

STEWART, J., delivered the opinion of the Court, in which BURGER,
C. J., and DOUGLAS, HARLAN, BRENNAN, WHITE, MARSHALL, and
BLACKMUN, JJ., joined. BLACK, J., filed a concurring statement,
*post,* p. 454.

*Robert R. Granucci,* Deputy Attorney General of Cali-
fornia, argued the cause for petitioner. With him on
the briefs were *Thomas C. Lynch,* Attorney General,
*Albert W. Harris, Jr.,* Assistant Attorney General, and
*William D. Stein,* Deputy Attorney General.

*Charles A. Legge* argued the cause and filed a brief
for respondent.

MR. JUSTICE STEWART delivered the opinion of the Court.

In 1959 a jury in a California trial court found the respondent guilty of murdering his wife by firing six bullets into her body at close range. A key prosecution witness at the trial was Ray Travers, an insurance agent. Two days after the respondent's wife was killed, Travers visited the respondent in jail at the latter's request, and the two conversed regarding an insurance policy on the life of the decedent. During the course of this conversation the respondent told Travers his version of how his wife had been killed, admitting that he had lain in wait for her with a gun, but insisting that her shooting had been accidental. As he was leaving the jail, Travers told the sheriff's officers about the respondent's statement. They asked him if he would be willing to have his next conversation with the respondent electronically recorded, and, since he planned to return to get additional information for the insurance company, he agreed. Later the same day Travers returned to the jail and had another conversation with the respondent, in the course of which the respondent again gave Travers substantially the same account of the circumstances of his wife's death. This conversation was recorded.[1] Over the objection of defense counsel, the recording of the second conversation was admitted in evidence at the trial. Travers in detailed testimony verified the authenticity of the recording, and orally recounted the two conversations he had had with the respondent. The accuracy of the recording and of Travers' testimony was not questioned; indeed, when the respondent took the stand he gave substantially the same account of how his wife had been killed that he had given to Travers.

---

[1] No charges had been filed against the respondent at the time of these conversations. Cf. *Massiah* v. *United States*, 377 U. S. 201.

On appeal to the Supreme Court of California, the respondent contended that the second conversation with Travers was an involuntary confession, and that the record of the conversation and Travers' supporting testimony had, therefore, been wrongly admitted in evidence at the trial. The state appellate court unanimously rejected this contention and affirmed the conviction. *People* v. *Atchley*, 53 Cal. 2d 160, 346 P. 2d 764. Proceeding upon the proposition that "any statement by an accused relative to the offense charged is inadmissible against him if made involuntarily," Justice Traynor's opinion for the Supreme Court of California reasoned as follows:

> "Travers testified that no threats were made, that no inducements were offered, and that in an earlier conversation defendant had volunteered substantially the same statements without being asked. Defendant at no time contradicted this testimony or suggested that any of his recorded statements were untrue. Moreover, the recorded conversation demonstrates that Travers referred to the insurance policy to explain why he was asking questions and not as an inducement for any particular answers. The trial court listened to the tape in chambers before ruling on its admissibility. There is therefore no merit in defendant's contention that the recording was admitted without a proper showing that his statements were made voluntarily.

> "Defendant also contends that the recording was obtained by such fraud that its use as evidence was inconsistent with due process. He relies primarily on *Leyra* v. *Denno,* 347 U. S. 556. . . . Although there was a similar deception in the present case, there was no comparable mental coercion. The deception itself does not render defendant's statements

inadmissible, for it was not of a type reasonably likely to procure an untrue statement. . . .

"While cross-examining Travers as to the voluntariness of defendant's recorded statements, defense counsel attempted to ask whether defendant had complained to Travers of not being permitted by the police, despite numerous requests, to talk to a lawyer. The trial court sustained an objection to this question and explained to the jury that the answer would have no bearing on the question of voluntariness. Defendant correctly contends that this ruling was erroneous, but fails to show that it was prejudicial. Although a refusal to permit defendant to talk to counsel suggests an intent to coerce, it seems highly improbable that either the trial judge or the jury would have inferred coercion from such a refusal alone in the light of the substantial and uncontradicted evidence that no coercion occurred." 53 Cal. 2d, at 170–171, 346 P. 2d, at 769–770.

This Court granted certiorari.[2] After hearing argument, we disposed of the case as follows:

"After hearing oral argument and fully examining the record, we conclude that the totality of circumstances as the record makes them manifest did not warrant bringing the case here. Accordingly, the writ is dismissed."[3]

In 1967 the respondent initiated the present habeas corpus proceeding in the United States District Court for the Northern District of California. He contended that decisions of this Court rendered subsequent to his direct appeal had established that the recording of his conversation with Travers had been unconstitutionally

[2] 362 U. S. 987.

[3] 366 U. S. 207.

introduced into evidence, and that he was accordingly entitled to a new trial. It was asserted that his statements were involuntary under the criteria stated in *Johnson* v. *New Jersey,* 384 U. S. 719, because he had been denied access to a lawyer and because he had not been advised of his right to remain silent; and that in any event the procedures used to determine the voluntariness of these statements were constitutionally inadequate under the criteria stated in *Jackson* v. *Denno,* 378 U. S. 368.

The District Court, although making clear that it was not "presently able to say that the confession was involuntary," nonetheless concluded that the respondent was entitled to relief because the state trial court had "excluded relevant and perhaps crucial evidence on the issue of whether the confession was voluntary" and thus "did not reliably determine whether Atchley's confession was voluntary or involuntary." 300 F. Supp. 68, 71, 72. The excluded evidence that the District Court thought "relevant and perhaps crucial" had to do with what the police had said to Travers before the recorded interview, whether the respondent had been trying to obtain a lawyer, whether Travers had deceived the respondent about his motives and feigned sympathy, whether the respondent knew that the conversation was being recorded, and, finally, with the respondent's intellectual and educational qualifications. Because inquiry into these matters had been restricted, the federal court held that the wrong standard of voluntariness had been applied in the state trial proceeding. Accordingly, the District Court ruled that the respondent was entitled to a new hearing in the state courts on the issue of voluntariness and, in the event that the statements should be found involuntary, to a new trial. The Court of Appeals [4] affirmed on the

---

[4] 412 F. 2d 230.

opinion of the District Court, Judge Barnes dissenting, and we granted certiorari.[5]

In *Jackson,* the Court held that to commit the determination of the voluntariness of a confession solely to the same jury that decided guilt was inconsistent with the constitutional requirement that the procedures used to determine voluntariness be reliable. Concern for the reliability of the procedures utilized to decide the voluntariness issue was also reflected in *Townsend* v. *Sain,* 372 U. S. 293, where it was held that a state trial court's resolution of a disputed issue of historical fact could not be dispositive in a later federal habeas corpus proceeding unless the petitioner had had a "full and fair hearing" on that issue in the trial court.[6]

But those decisions did not establish that an applicant for federal habeas corpus is entitled to a new hearing on the voluntariness issue, in either the federal or state courts, merely because he can point to shortcomings in the procedures used to decide the issue of voluntariness in the state courts. Our decisions make clear that he must also show that his version of events, if true, would require the conclusion that his confession was involuntary. Thus in *Townsend* v. *Sain, supra,* we did not reach the question whether a hearing was required until we had determined, as a threshold matter, that the application for habeas corpus alleged facts which, if true, would establish that the petitioner had been deprived of constitutional rights by the use of an involuntary confession. 372 U. S., at 309. We said that "the Federal District Court could not conclude that the state trial judge admitted the confession because he disbelieved the evidence which would show that it was involuntary." *Id.,*

---

[5] 397 U. S. 905.

[6] Congress in 1966 amended 28 U. S. C. § 2254 (see 1964 ed., Supp. V), so as substantially to codify most of the habeas corpus criteria set out in *Townsend* v. *Sain.*

at 321. And in *Jackson* v. *Denno, supra,* we did not jump from the premise that the procedures used to determine voluntariness were inadequate, to the conclusion that the petitioner was entitled to a new hearing. Instead, we pointed out:

> "This is not a case where the facts concerning the circumstances surrounding the confession are undisputed and the task is only to judge the voluntariness of the confession based upon the clearly established facts and in accordance with proper constitutional standards. Here there are substantial facts in dispute . . . . Whether Jackson is entitled to relief depends upon how these facts are resolved, for if the State is to be believed we cannot say that Jackson's confession was involuntary, whereas if Jackson's version of the facts is accepted the confession was involuntary and inadmissible." 378 U. S., at 391–392.

The reason for this approach is obvious. Unless the result of the habeas corpus proceeding turns on disputed issues of historical fact, a rehearing on the issue of the involuntariness of a defendant's incriminating statement would be an exercise in futility, since the applicant for federal habeas would not be entitled to relief even if his allegations of historical fact should be found to be true. Yet the District Court in this case quite evidently failed to make the threshold determination that the respondent would be entitled to relief if his allegations were believed. Rather the court, disavowing any present ability to say whether the respondent's statement was involuntary, said only that "the trial court could have more competently determined whether [the respondent's] will was overborne" had the circumstances surrounding the statement been more fully explored. 300 F. Supp., at 72.

The respondent's trial took place several years before the decisions of the Court in *Escobedo* v. *Illinois,* 378

U. S. 478, and *Miranda* v. *Arizona,* 384 U. S. 436, and those decisions have not been given retroactive effect. *Johnson* v. *New Jersey,* 384 U. S. 719. The admissibility of the respondent's statement as a constitutional matter was governed, therefore, by the contemporary case law elaborating the due process standard of voluntariness. The question was whether the will of the defendant had been overborne so that the statement was not his free and voluntary act, and that question was to be resolved in light of the totality of the circumstances. See, *e. g., Davis* v. *North Carolina,* 384 U. S. 737; *Haynes* v. *Washington,* 373 U. S. 503, 513–516; *Spano* v. *New York,* 360 U. S. 315, 323; *Ashcraft* v. *Tennessee,* 322 U. S. 143, 147–148.

There is no reason to infer that the Supreme Court of California did not apply the correct constitutional criteria in reviewing the issue, and the court quite clearly assumed the truth of the respondent's version of the historical facts still in dispute, in holding that his statement was not involuntary.

The respondent contended that his confession was involuntary because he had been denied a lawyer, because he had not been advised of his right to remain silent, because he had thought he was giving Travers information that Travers needed to obtain the insurance money, because he had thought that what he told Travers would be held in confidence, because he had not known that his conversation with Travers was being recorded, and because he was lower than average in intelligence and educational attainments. Of these six assertedly coercive factors, three went only to the weight to be given other evidence of actual coercion. Low intelligence, denial of the right to counsel, and failure to advise of the right to remain silent were not in themselves coercive. Rather they were relevant only in establishing a setting in which actual coercion might have been exerted to over-

come the will of the suspect. See *Darwin* v. *Connecticut,* 391 U. S. 346; *Greenwald* v. *Wisconsin,* 390 U. S. 519; *Davis* v. *North Carolina, supra.* The circumstance that the conversation was recorded without the respondent's knowledge did not tend to show either actual coercion or a potentially coercive setting. The factual issue whether the respondent thought his statements to Travers would be held in confidence was resolved in the trial court. Travers testified that he advised the respondent that what he said would have to be reported to the insurance company and that the respondent knew it would be a matter of record. This testimony was not contradicted, and there was no reason for the California Supreme Court to disturb the finding, implicit in the trial record, that the respondent had had no reason to believe that Travers would not repeat what he had been told. See *Townsend* v. *Sain,* 372 U. S. 293, 314. The remaining contention was that the respondent's statement was improperly induced by the suggestion that Travers needed the information in order to obtain insurance money for Atchley's children and stepchildren. The California Supreme Court properly found that "the recorded conversation demonstrates that Travers referred to the insurance policy to explain why he was asking questions and not as an inducement for any particular answers."

It is clear that the California courts gave full consideration to the issue of the voluntariness of the respondent's statement, and that they applied correct standards of constitutional law in upholding its admission in evidence. Accordingly, the District Court was in error in requiring a new trial of claims that were long ago fully, fairly, and correctly determined in the courts of California.

*The judgment is reversed.*

MR. JUSTICE BLACK concurs in the judgment and substantially all of the opinion.