**UNITED STATES of America,**
**Appellee,**

v.

**Everett Joseph ARMSTRONG,**
**Appellant.**

**No. 71–1588.**

United States Court of Appeals,
Eighth Circuit.

Submitted April 13, 1972.

Decided June 28, 1972.

Gary J. Pashby, Sioux Falls, S. D., for appellant.

William F. Clayton, U. S. Atty., Richard D. Hurd, Asst. U. S. Atty., Sioux Falls, S. D., for appellee.

Before Mr. Justice CLARK,* MATTHES, Chief Judge, and LAY, Circuit Judge.

MATTHES, Chief Judge.

Everett Joseph Armstrong was charged in three counts of a four-count indictment: Count II alleged that he had violated 18 U.S.C. § 2316 [1] by causing stolen cattle to be transported in interstate commerce; Count III alleged that Armstrong, Jeffrey Jerel LeBeau, and Jeffrey's father, Frederick Felix LeBeau (both of whom are Indians) had conspired to steal cattle in violation of 18 U.S.C. § 371; [2] and Count IV alleged that the same persons had conspired to transport stolen cattle in interstate commerce, also in violation of 18 U.S.C. § 371.[3] Jeffrey Jerel LeBeau and Frederick Felix LeBeau were not named in Count II. Jeffrey pled guilty as to Count III. Counts I and IV were dismissed as to him and the entire indictment was dismissed as to Frederick Fe-

---

* The Honorable Tom C. Clark, Associate Justice of the United States Supreme Court, Retired, sitting by special designation.

1. Section 2316 provides as follows:
   Whoever transports in interstate or foreign commerce any cattle, knowing the same to have been stolen, shall be fined not more than $5,000 or im-

prisoned not more than five years, or both.

2. Section 371 provides for the punishment of persons conspiring to commit an offense and doing "any act to effect the object of the conspiracy."

3. Count I charged that Frederick Felix LeBeau and Jeffrey Jerel LeBeau (both Indians) had stolen cattle within the Cheyenne River Reservation.

lix LeBeau apparently because he was a patient in a hospital.

Armstrong was tried by a jury. Count III of the indictment was dismissed upon his motion at the close of the government's case. A verdict of guilty ultimately was returned on the two remaining counts. The facts giving rise to this prosecution will be reviewed prior to disposition of the issues presented by Armstrong on appeal.

Armstrong had been a South Dakota cattle dealer for thirty-five years at the time of his indictment. The LeBeaus, to whom Armstrong had sold cattle, lived on a ranch on the Cheyenne Indian Reservation in South Dakota. The LeBeau ranch was adjacent to the ranch of Marlin Bender, which also was on the reservation and from which the cattle involved in this case were stolen.

Bender discovered on March 6, 1971, that a portion of a fence had been taken down and then replaced. He and Eugene Trottier, a special investigator for the Bureau of Indian Affairs, subsequently found horse and cattle tracks which led across Bender's land, past the affected area of fence, and toward the corrals on the LeBeau ranch. Bender later was taken to Lakeville, Minnesota, where he identified twelve head of cattle which had been stolen from him. The cattle had been delivered from South Dakota to a Lakewood resident named Jackson. Armstrong and Jackson had often had business dealings and previously had been business partners for a period of twelve years.

After the identification had been made, Trottier visited Armstrong at the latter's ranch to determine whether Armstrong owned a trailer which had been observed on the LeBeau ranch. Trottier made notes of this conversation and eventually gave testimony drawn from these notes.

At trial, Jeffrey Jerel LeBeau, who as noted, had entered a plea of guilty to one charge against him, testified against Armstrong. LeBeau related that Armstrong had told Frederick Felix LeBeau "to get some cattle and he (Armstrong) would get rid of them for him." Jeffrey also described the theft of the cattle and Armstrong's complicity in the use of his trailer to transport the cattle to Minnesota.

Armstrong testified in his own defense, admitting that his trailer had been used to transport the cattle but denying knowledge that the cattle had been stolen. The gist of Armstrong's defense was that he had bought the stolen cattle from the LeBeaus with the understanding that the cattle legitimately belonged to the sellers.

Trottier testified regarding statements made to him by Armstrong during his visit to the Armstrong ranch.

On appeal, Armstrong alleges the following grounds for reversal: (1) that the trial court erred in allowing Jeffrey Jerel LeBeau to testify regarding statements made to him by Frederick Felix LeBeau out of the presence of Armstrong; (2) that the trial court erred in allowing Agent Trottier to testify regarding statements made to him by Armstrong prior to the latter's arrest and prior to completion of the former's investigation; and (3) that the trial court erred in allowing a brand inspector to give testimony which was offered by the government in rebuttal with regard to customary procedures in the sale of cattle. These contentions will be discussed seriatim.

■ Armstrong's objection to the testimony of Jeffrey Jerel LeBeau is twofold: although he recognizes that the declarations of a co-conspirator may be admissible against a defendant as an exception to the hearsay rule, Krulewitch v. United States, 336 U.S. 440, 443, 69 S.Ct. 716, 93 L.Ed. 367 (1949), he claims that this exception is not applicable in the present case because (1) Jeffrey Jerel LeBeau was not an independent or unbiased witness and (2) no prima facie showing of a conspiracy aliunde the hearsay declarations of LeBeau was made. We find neither of these objections acceptable.

The possible bias of a witness is a consideration bearing upon his credibility, and witness credibility is a matter properly left to juries. Evans v. United States, 326 F.2d 827, 831–832 (8th Cir. 1964). It is to be noted that the jury in this case was carefully instructed regarding the caution with which accomplice testimony is to be received.

Further, we agree with the district court that there had been introduced evidence of a conspiracy independent of the testimony here challenged. This evidence included testimony tending to establish the following: that Armstrong's trailer had been used to transport the stolen cattle; that Armstrong had met with the LeBeaus on the night of the theft; and that Armstrong had received proceeds of the sale. The trial judge also instructed the jury that before they could consider the hearsay evidence, they must find beyond a reasonable doubt both that a conspiracy had existed and that Armstrong had been a conspirator.

Nor do we find any basis for reversal in the district court's treatment of Trottier's testimony regarding statements made to him by Armstrong. Armstrong contends that the court failed to determine the voluntariness of these statements prior to ruling them admissible, as required by Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). We cannot accept this argument.

It is to be noted first that the district court did conduct a hearing regarding the admissibility of the controverted testimony. Trottier was called to the stand outside the presence of the jury and prior to his appearance as a witness in the government's case in chief. After he had been examined and cross-examined regarding the circumstances of his conversation with Armstrong, the following ruling was made by the district court:

[T]his was not a custodial investigation, and there was no violation of [Armstrong's] Sixth Amendment rights and Fifth Amendment rights, the Sixth Amendment referring to assistance of counsel, and the Fifth Amendment, of course, referring to self-incrimination, and there was no violation of the Miranda rule.

Next, even if the hearing conducted in this case was deficient in some procedural aspect, the principle enunciated by the Supreme Court in Procunier v. Atchley, 400 U.S. 466, 91 S.Ct. 485, 27 L.Ed. 2d 524 (1971), would preclude a reversal of the decision of the district court in this case. In *Atchley*, the Court held that new voluntariness hearings are not to be granted merely on the basis of procedural deficiencies in the original hearings. In order to obtain a rehearing on the issue of voluntariness, the Court stated, an appellant "must also show that his version of events, if true, would require the conclusion that his confession was involuntary." 400 U.S. at 451, 91 S.Ct. at 488. See also Hanson v. Warden, 461 F.2d 1085 (8th Cir. 1972). Armstrong has made no such showing.

Finally, it is our conclusion that the district court's admission of rebuttal testimony by the government brand inspector affords no basis for reversal. The admissibility of rebuttal evidence is a matter entrusted to the sound discretion of the trial judge. United States v. Glaziou, 402 F.2d 8, 16 (2nd Cir. 1968), cert. denied, 393 U.S. 1121, 89 S.Ct. 999, 22 L.Ed.2d 126; Brooke v. United States, 128 U.S.App. D.C. 19, 385 F.2d 279 (1967). We are able to discern no abuse of discretion in the district court's admission of rebuttal evidence in this case. The testimony complained of was, in fact, strictly limited by the trial judge.

The judgment of the district court is affirmed.