**Jackie Ray BEASLEY, Petitioner,**

v.

**Manfred HOLLAND, Warden,
Respondent.**

**Civ. A. No. 2:85–0547.**

United States District Court,
S.D. West Virginia,
Charleston Division.

Dec. 2, 1986.

Jackie Ray Beasley, pro se.

Mark A. Karl, Moundsville, W.Va., for petitioner.

J. Bradley Russell, Deputy Atty. Gen., Charleston, W.Va., for respondent.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending is Respondent's motion to dismiss Jackie Ray Beasley's petition for writ of habeas corpus. Beasley has filed a number of pleadings and papers which respond to the Respondent's motion to dismiss. At Beasley's request counsel was appointed. Despite abundant time permitted counsel to respond to the motion to dismiss, which was filed July 15, 1985, Beasley's counsel has failed utterly to respond. The Court must now consider whether Beasley's petition should be considered without the benefit of appointed counsel's response. The Court first decides whether Beasley's petition should be considered considered submitted on the Respondent's motion to dismiss and second considers the necessity to find more cooperative counsel.

Appointment of counsel is permitted by 28 U.S.C. § 1915 and 18 U.S.C. § 3006A(g). *Cook v. Bounds,* 518 F.2d 779 (4th Cir.1975). There is no constitutional right, however, to the assistance of an attorney in a habeas proceeding. *Barker v. Ohio,* 330 F.2d 594 (6th Cir.1964). The propriety of appointing an attorney turns on whether a hearing is required to decide the habeas question.

Several factors aid in the determination of whether a hearing is necessary to consider a habeas petition. When the petition presents a pure question of law, no hearing is necessary. *Townsend v. Sain,* 372 U.S. 293, 309 n. 6, 83 S.Ct. 745, 755 n. 6, 9 L.Ed.2d 170 (1963). Where the facts are not substantially in dispute, no hearing is necessary. *Foster v. Barbour,* 613 F.2d

59, 60–61 (4th Cir.1980). Where the Petitioner is not entitled to relief under his own version of the facts, no hearing is necessary. *Procunier v. Atchley*, 400 U.S. 446, 91 S.Ct. 485, 27 L.Ed.2d 524 (1981). Also, where Petitioner had a full hearing before the state court or in another collateral proceeding, no hearing is necessary. *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed. 722 (1981).

Beasley's petition raises five issues: (1) whether improper admission of evidence denied him a fair trial; (2) whether prosecutorial misconduct deprived him of a fair trial; (3) whether he was denied effective assistance of counsel; (4) whether he was improperly denied a response to a bill of particulars; and (5) whether the state offered sufficient evidence to convict Beasley. The analysis of each of these claims requires only examination of the trial record and Beasley's petition. The admissibility of evidence raises a question of law only and is governed by the trial record. Prosecutorial misconduct in the form of suborning perjury is insufficiently pled, and prosecutorial misconduct in the form of intimidation of witnesses was the subject of a comprehensive hearing by the trial court. This Court finds no further evidence need be taken on intimidation of witnesses. Ineffective assistance of counsel, as raised, fails to state a claim for relief. The bill of particulars question and the sufficiency of the evidence are governed by the trial record and thus pose a question of law only.

Each of the grounds raised by Beasley's petition is covered by the trial record and petition or was the subject of an evidentiary hearing in state court. Under *Townsend, Foster, Atchley* and *Sumner v. Mata*, no hearing is necessary. No hearing being necessary, Beasley does not require assistance of additional counsel, and none will be provided by the Court.

Before examining the merits of Beasley's substantive claims, the Court will resolve a number of pretrial motions filed by Beasley *pro se.* On July 19, 1985, Beasley filed some twenty motions for production of witnesses and evidence and for other special considerations. As noted, the Court granted the motion for appointment of counsel, but has not yet addressed the remaining motions. Also pending is Beasley's motion of September 10, 1986, for bail pending the outcome of his habeas petition. Considering the matters raised in each of these motions, and in light of the issues raised by Beasley's petition and resolved by this opinion, the Court denies the pending pretrial motions.

Beasley has communicated with this Court frequently in presenting and supplementing his claims, both in the currently pending petition and in a previous petition filed in 1984. Beasley has actively pursued his case by himself, and has never restrained direct communication with the Court despite intervening appointment of counsel. Beasley filed a lengthy response to the Respondent's motion to dismiss under this Court's directions given pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir.1975).[1] In a letter received by the Court October 24, 1986, Beasley now states that he has sent everything he knows about his case to this Court. The case now is mature for consideration.

The pertinent facts are as follows. On July 28, 1982, Doris Beasley's body was found in the Kanawha River snagged to a branch approximately twenty feet offshore and slightly downstream from a point where she and the Defendant had been fishing and camping the previous night. After police investigation, Jack Beasley was charged with murder pursuant to *W.Va.Code*, § 61–2–1 (1931, as amended). The state's case against Beasley included evidence which showed that in February and March of 1982, Beasley developed a plan which he discussed with fellow inmates at the West Virginia Penitentiary in Moundsville, where he was then incarcerated. He was heard by inmates to say that when he was released he was going to kill

---

**1.** This response, dated August 2, 1985, was filed before Beasley's counsel was appointed and before an extension for further response was obtained.

his wife and become rich by recovering insurance money. Beasley did not disclose how he was going to kill his wife; he simply said that he would do it in a way which would produce no witnesses. Prisoners testified that Beasley believed his wife was being unfaithful to him.

On the day after Beasley was released from prison, he inquired into purchasing $300,000–worth of term life insurance on his life and on the life of his wife. Metropolitan Life Insurance Agent Martin Schraf told Beasley that he did not need that much insurance and refused to issue a binder on a policy. Beasley then approached Prudential insurance agent Thomas Conley and requested from Conley $250,000 of term life insurance on himself and his wife. Conley issued a binder and accepted a premium from Beasley. In obtaining this term insurance Beasley represented that he earned $78,000 a year, and upon his failure to confirm that fact, Prudential rejected the policy and refunded Beasley's premium in May 1982.

Beasley then resorted to purchasing a series of term life insurance policies on himself and his wife, each with a face value of $100,000 and which would pay double indemnity in the event of accidental death. First, Beasley obtained a $100,000 policy with an accidental death rider from United States Fidelity and Guaranty Company on May 20, 1982. He then obtained a $100,000 policy with an accidental death rider from State Farm Insurance Company on May 21, 1982. Also on the same date, he obtained a $100,000 term life insurance policy with an accidental death rider from New York Life Insurance Company. Finally, on May 24, 1982, Beasley obtained a $100,000 term life policy with an accidental rider from Allstate Insurance Company.

During June and July, 1982, Beasley and his wife camped and fished along the Kanawha River. Beasley and his wife went on such an excursion on July 27, 1982. At 1:30 a.m. on July 28, 1982, Beasley contacted State Trooper C.R. Blankenship and informed the trooper that his wife was missing. Beasley said he thought she was in

the water. Trooper Blankenship arrived at the scene. Beasley told the trooper that he and his wife were fishing and camping, that she had been drinking, and that he thought his wife was in the water. A search for Beasley's wife turned up nothing that night. Her body was recovered the next day.

### I. *Admissibility of Evidence*

■ Beasley challenges the admissibility of evidence offered at trial against him. Absent circumstances impugning fundamental fairness of trial or infringement of specific constitutional rights, improper admission of evidence is not subject to review in a federal habeas corpus proceeding. *Grundler v. North Carolina,* 283 F.2d 798, 802 (4th Cir.1960). The trial court's consideration of the probative value versus the prejudicial effect of particular pieces of evidence, absent extraordinary circumstances, will not be disturbed. *U.S. v. MacDonald,* 688 F.2d 224 (4th Cir.1982).

■ Beasley challenges the introduction of insurance policies, expert testimony given by divers, hypothetical questions posed to forensic pathologists, and photographs admitted at trial. Beasley's recent insurance purchases, as the Court notes below, were relevant to the issue of motive, and as such it is relevant to Beasley's guilt. The admission of this evidence did not infringe on a specific constitutional protection, and it was not so extraordinary as to impugn the fundamental fairness of the trial proceeding. Similarly, the trial court's permitting the divers who recovered Beasley's wife to testify about the current and probable movement of Beasley's wife's body did not impugn a specific constitutional protection, nor did it render the trial proceeding fundamentally unfair.

■ The trial court also permitted the state to put hypothetical questions to a forensic pathologist to demonstrate that Mrs. Beasley's death could have been accomplished by criminal means without leaving evidence of criminal means on her body. One question asked whether it was possible to drown a person without leaving

marks on his body by pushing him from a boat. The state presented no evidence of a boat being at or near the campsite the night of Mrs. Beasley's death. This lack of foundation was made clear to the jury, and there were other hypothetical questions put which were based upon things present at the campsite. The "pushed from boat" hypothet did not infringe upon a particular constitutional guarantee, and in the perspective of the entire trial, this question, albeit without foundation, did not impugn the fundamental fairness of the proceeding.

■ Beasley also challenges the introduction of photographs which depicted the river bank area where the Beasleys camped the night of Mrs. Beasley's death from various perspectives. The trial court excluded photographs showing Mrs. Beasley's body as it was recovered from the river. The photographs of the campsite and the river bank did not infringe upon any particular constitutional guarantees and did not impugn the fundamental fairness of the trial.

## II. *Prosecutorial Misconduct*

■ Beasley raises several claims of prosecutorial misconduct. Prosecutorial misconduct is reviewable on habeas proceeding where the prosecutorial misconduct reaches the level which denies the defendant a fair trial. *United States v. Weatherless*, 734 F.2d 179 (4th Cir.1984). The Fourteenth Amendment due process clause prohibits the knowing and deliberate use of perjured testimony by prosecutors and other government officials. *Miller v. Pate*, 386 U.S. 1, 87 S.Ct. 785, 17 L.Ed.2d 690 (1967). To obtain relief on the basis of subornation and perjury, the Petitioner must demonstrate in his petition for habeas corpus (1) that a witness made a false statement; (2) that the false statement was material; and (3) that the false testimony was knowingly and intentionally employed by the government in order to obtain a conviction. *McBride v. U.S.*, 446 F.2d 229, 232 (10th Cir.1971). Mere conclusory charges of perjury and the knowing use of

the alleged perjury is insufficient to warrant a hearing or habeas relief. *U.S. v. Spadafora*, 200 F.2d 140, 143 (7th Cir. 1952). The mere falsity of a witness' testimony is insufficient without allegations specifically showing knowing use of perjured testimony. *Thompson v. Garrison*, 516 F.2d 986, 988 (4th Cir.1978). The credibility of witnesses is within the sole province of the jury and is not subject to further judicial scrutiny. *Pigford v. United States*, 518 F.2d 831 (4th Cir.1975). Beasley alleges that the prisoners' testimony and the testimony of Dometra Schoolcraft were intrinsically incredible and patently untrue. First, the Court in reviewing the testimony finds that it was not intrinsically incredible nor patently untrue. In the second instance, Beasley's claims are not supported by any factual basis that false statements were knowingly used by state officials to obtain his conviction. Beasley at best argues that the witnesses against him were not credible, and this, in view of *Pigford*, fails to raise a ground for relief on a writ of habeas corpus.

■ Beasley claims further prosecutorial misconduct through intimidation of the prisoner witnesses. This matter was subjected to close scrutiny at the trial court, and the judge there determined that no witness changed or colored his testimony by reason of the government's conduct. This factual holding will not be disturbed in a federal habeas proceeding. 28 U.S.C. § 2254(d).

The Court has also reviewed the prosecutor's statements made during opening statement and closing argument and at other points in the trial in the presence of the jury to determine whether any language used by the prosecutors was manifestly intended to be or would naturally be taken to be a comment on Beasley's failure to testify. *United States v. Whitehead*, 618 F.2d 523, 527 (4th Cir.1980). The Court found no statements of the prosecutors which violate this principle.

## III. *Ineffective Assistance of Counsel*

■ Beasley also raises an ineffective assistance of counsel claim. In order to

obtain relief for ineffective assistance of counsel, two elements must be proved: First, Beasley overcome the presumption that counsels' conduct was within the wide range of reasonable professional assistance and show that his counsels' representation fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 687–91, 104 S.Ct. 2052, 2064–67, 80 L.Ed.2d 674 (1984). Second, Beasley must show that there is a reasonable probability that but for his counsels' errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 691–96, 104 S.Ct. at 2066–69. Claims charging insufficient time to prepare are considered in the totality of circumstances surrounding the representation. *U.S. v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). The further fact of counsels' youth and inexperience does not, without more, state an ineffective assistance claim. *U.S. v. Cronic*, 466 U.S. 648, 665, 104 S.Ct. 2039, 2050, 80 L.Ed.2d 657 (1984).

■ Beasley complains that his counsel unreasonably focused upon the *corpus delicti* issue. The single-minded adherence to the *corpus delicti* issue did not fall below an objective standard of representation because it is apparent that Beasley's counsel properly concluded this was the most serious deficiency in the state's case. It is an acceptable and often employed strategy for counsel to focus the jury's attention on one significant problem in the prosecutor's case to avoid raising weaker defenses and thereby dilute the jury's attention.

■ Beasley also complains that no lesser included offense instruction was proffered by his counsel at the charge conference. The essence of Beasley's defense was that no crime had been committed. The trial record demonstrates that if a crime was committed, it occurred with premeditation. Counsel reasonably could believe that it would be a bad tactical choice to offer a lesser included instruction to give the jury the alternative of choosing a lesser included offense if it felt uneasy about convicting on first degree murder. Also, the trial judge properly could have excluded a lesser included offense because there was no evidence adduced to support anything but a choice between murder with premeditation or no homicide at all.

■ Beasley also charges that his counsel was ineffective because they did not call Beasley as a witness in his own behalf. Since the defense theory was that the government had no proof of crime, there was no necessity to place Beasley on the stand. If Beasley had taken on the stand, the problem of defending his credibility would have been presented. For example, Beasley made declarations under oath on insurance applications which later were found to contain discrete, false statements.[2] There were also several arguably false statements made at the time Beasley informed the police that his wife was missing. Defense counsel reasonably could have expected that if Beasley were put on the stand, the issue of the case would shift from whether the state had evidence to prove Beasley's guilt to whether Beasley was telling the truth. Under those circumstances counsel did not not fall below an objective standard of reasonable assistance when they decided not to put this defendant on the stand.

■ Beasley also charges that his counsels' inexperience and the brief period given them to prepare for trial denied him effective assistance of counsel. The Court accepts as true Beasley's assertion that this was the first capital offense that each of Beasley's two lawyers had tried. The Court also accepts that these attorneys had "only" five or six months to prepare this case for trial. *U.S. v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) holds that mere inexperience does not state a claim for relief based on ineffective assistance of counsel. Also, the several months given to defense counsel for preparation was not·so brief as to deny counsel

---

**2.** Consider, for example, Beasley's claim on a Prudential insurance application that he made

$78,000 per year during the period when he was incarcerated at Moundsville.

effective opportunity to prepare Beasley's defense.

### IV. *Bill of Particulars*

■ Beasley charges that the government should have been required to specify the manner of the victim's death in response to his bill of particulars. The purpose of a bill of particulars is to enable the accused to prepare for trial and to prevent surprise. *United States v. Glaze*, 313 F.2d 757, 759 (2d Cir.1963). The state did not produce any surprise evidence on this issue. Her murder was proved circumstantially, and this manner of proof, as reflected by the trial record, was known to counsel for Beasley.

### V. *Sufficiency of the Evidence*

Lastly, Beasley raises the issue of whether the evidence offered was sufficient to prove his guilt of murder. In a habeas corpus proceeding, where the sufficiency of the evidence of conviction is challenged, the issue is whether, viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime charged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

■ The reviewing court must consider circumstantial evidence and permit the government the benefit of all reasonable inferences from the facts proven to the facts sought to be established. *U.S. v. Tresvant*, 677 F.2d 1018 (4th Cir.1982). The government is not required in a federal habeas corpus proceeding to show that circumstantial evidence excludes all reasonable hypotheses of innocence. *U.S. v. Bobo*, 477 F.2d 974, 989 (4th Cir.1973); *U.S. v. Chappell*, 353 F.2d 83 (4th Cir.1965). Rather, the prosecutor's burden is to prove every element required for a conviction beyond a reasonable doubt. *In Re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

■ *W.Va.Code*, § 61–2–1 provides in pertinent part as follows: "Murder by ...

any willful, deliberate and premeditated killing ... is murder of the first degree." Therefore, in the instant case, the government had to prove that Beasley caused the death of his wife and that Beasley did so willfully, deliberately and with premeditation at the time and place alleged. *Corpus delicti* is implicitly required to prove a criminal killing. *State v. Hall*, 304 S.E.2d 43, 49 (W.Va.1983); *State v. Burton*, 163 W.Va. 40, 254 S.E.2d 129, 134 (1979); *State v. Beale*, 104 W.Va. 617, 632, 141 S.E. 7 (1927); *Riffle v. King*, 302 F.Supp. 992, 993 (N.D.W.Va.1969). In order to establish *corpus delicti*, the government must prove (1) that a killing occurred and (2) that a criminal act caused the killing. *State v. Bias*, 156 W.Va. 569, 574, 195 S.E.2d 626 (1973); *Riffle*, 302 F.Supp. at 993.

■ The criminal agency of a killing does not need to be demonstrated conclusively from an autopsy of the deceased. *Riffle*, 302 F.Supp. at 996. *Corpus delicti* may be proved by circumstantial evidence by proof of (1) means, (2) motive, (3) time and place, and (4) conduct of the defendant. *Hall*, 304 S.E.2d at 49; *Bias*, 156 W.Va. at 574; *Beale*, 104 W.Va. at 632; *Riffle*, 302 F.Supp. at 996.

The following passage from *Riffle v. King* is particularly appropriate to this case:

"[P]roof of the cause of death is not limited to facts learned from the autopsy. [Citations omitted.] The testimony of the pathologist raises questions regarding the cause of death by pointing out the absence of organic disease which could have caused the death and ... although the testimony does not positively show that death resulted from foul play, it does not exclude such a possibility. In addition to the testimony of the pathologist, there is the testimony of the coroner, ... to the effect that the conditions he observed were consistent with death from suffocation but not consistent with death from natural causes or exposure.

Because circumstantial evidence is admissible under West Virginia law to show that death resulted from criminal

agency, this court is able to review the circumstances surrounding the death as well as the medical testimony regarding the cause of death in order to determine whether *any* evidence was presented regarding the essential elements of the *corpus delicti.*" [Emphasis in original.]

■ In Beasley's case, the state proved means by physically comparing Beasley and his wife. Beasley is 6'2" tall and weighs 200 pounds. His wife was 5'3" and weighed 115 pounds. This, together with Mrs. Beasley's intoxication supported expert testimony that it would be possible for Beasley to overpower his wife to either suffocate her at the campsite or to hold her head under the water.

Motive was proved by evidence that Beasley stood to receive $400,000 in insurance proceeds upon the occurrence of his wife's death, and that these proceeds would be doubled upon proof that the death was accidental. As to the place and time of death, the state proved that Beasley was at the campsite in and about the area where his wife entered or was placed in the water. No proof was offered to show that any other persons were in the area.

As to conduct, the state proved that Beasley made statements that his his intentions were to kill his wife and live off the proceeds of her insurance. Beasley also made an incriminating statement to a babysitter caring for the children when Beasley came home without his wife from the fateful fishing trip. The babysitter testified: "I was out of cigarettes and I asked [Beasley] if I could have one, and he told me to take hers, that she would not be back to need them." The cigarettes belonged to Beasley's wife, and the statement was made before Mrs. Beasley's fate supposedly was known.

■ The Court has reviewed substantial argument about the version Beasley gave the police, the physical evidence and the incompatability of the two. This evidence also is relevant to Beasley's guilt. An exculpatory statement containing specific facts made by a defendant and found to be untrue can be considered evidence of the Defendant's consciousness of guilt. *United States v. McDougald,* 650 F.2d 532, 533 (4th Cir.1981). Beasley's statements about the events of the evening of July 27, and the early morning of July 28, 1982, amount to more than general denials of guilt; rather, the statements are specific averments of fact. The state adduced evidence to prove Beasley's statements were incorrect.

Most illustrative is Beasley's statement on the probable time of death. Beasley told state troopers that he and his wife retired for the evening at 10:30 p.m. and that at some time later, Beasley supposes 11:00 p.m., his wife arose and left the campsite area. The autopsy reflected that Beasley's wife's stomach contained food in a state of digestion which indicated that she died within two hours after eating. It was established that Mrs. Beasley ate at about 6:30 p.m. Beasley has made a number of submissions on this point. His arguments are unavailing here because these very matters were presented to the jury at trial, and the jury found against Beasley's explanations. Again, the question for this Court is not whether the jury's decision was the best decision, rather it is: from the evidence, viewed in the light most favorable to the prosecution, whether a rational trier of fact could find the essential elements of the offense beyond a reasonable doubt. The state proved by circumstantial evidence the means, motive, time, place and conduct from which a rational trier of fact could have found Beasley guilty of killing his wife willfully and with premeditation. Beasley's ground of insufficient evidence to convict must fail.

Since all grounds raised by the Petitioner fail to merit relief, the Respondent's motion to dismiss is granted.