Robert L. **HUNT** (Alias Donald Adams), Petitioner-Appellant,

v.

STATE OF GEORGIA, S. Lamont Smith, Warden, Georgia State Prison, Respondent-Appellee.

No. 29992.

United States Court of Appeals, Fifth Circuit.

July 21, 1971.

Rehearing Denied Oct. 18, 1971.

Brown, Chief Judge, dissented and filed opinion.

---

C. Ronald Ellington (Court Appointed), J. Ralph Beaird, (Court Appointed), Athens, Ga., for petitioner-appellant.

Arthur K. Bolton, Atty. Gen., William R. Childers, Jr., Dorothy Beaslley, Marion O. Gordon, Asst. Attys. Gen., Harold N. Hill, Jr., Executive Asst. Atty. Gen., Atlanta, Ga., for respondent-appellee.

Before JOHN R. BROWN, Chief Judge, COLEMAN and CLARK, Circuit Judges.

PER CURIAM:

Robert L. Hunt is serving a life sentence in a Georgia prison for the offense of robbery, for which, upon conviction, he might have been sentenced to death.[1] The Georgia State Courts, after a hearing, denied habeas corpus. On the basis of the state court record, the United States District Court likewise denied relief. We affirm.

The petition in the District Court alleged that although he requested it, Hunt "at no time had counsel" when he entered his plea of guilty and was sentenced, that he "never saw nor had any knowledge of Mr. John S. Warchak [counsel]". For a second ground, it was alleged that Negroes had been systematically excluded from the grand jury which indicted him. There was no allegation whatever, aside from the lack of counsel, that Hunt's plea had not been voluntarily entered.

We have before us an official transcript of the habeas corpus hearings held for Hunt in the Superior Court at Tattnall County, Georgia. At a hearing which began on May 7, 1969 the State announced its intention of using the deposition of Attorney John S. Warchak, who, it was said, represented Hunt when he entered his plea of guilty in Bibb Circuit Court. The petitioner, Hunt, complained that he had caused a subpoena to issue for the appearance of Mr. Warchak as his witness but that he had not heard from it. The Court explained to Hunt that since he had no funds to pay the travel expenses of his proposed witness to the scene of the hearing he could propound written questions by way of cross interrogatories. Hunt asked for a continuance for that purpose. This was granted but Hunt filed no questions for Warchak to answer.

On November 26, 1969, a new hearing began, with Hunt present. Hunt took the witness stand and testified that although he requested counsel in the trial court, "he did at no time have counsel". He further testified that he had learned from hearsay that the grand jurors which returned the indictment against him lived in a "white area," although he knew none of them nor their race. He was asked, "You deny that you had a lawyer at all"? He answered, "That's right."

The State introduced the deposition of Attorney Warchak, to which Hunt had not filed cross interrogatories. This lengthy and detailed deposition, if believed, leaves no doubt that this attorney actively, energetically, and efficiently, by court appointment, represented the petitioner with such competence and skill that Hunt avoided trial for the capital penalty, was allowed to enter a plea of

---

1. The record indicates that the robbery, committed upon a female, was accompanied by severe personal harm.

guilty to one count of a two count indictment, and received a life sentence. Mr. Warchak stated that at the time Hunt was well pleased with this result.

In an unpublished memorandum opinion dated May 13, 1970, Judge Bootle found and held that there was "no doubt that applicant was adequately and capably represented at every step of the Bibb County proceedings". He further held that the testimony of the petitioner was "insufficient to show any discrimination in the selection or composition of the grand jury".

The finding as to representation is, as above set out, abundantly supported by the record. See Rule 52(a) Federal Rules of Civil Procedure and the numerous habeas corpus appeals decided under that Rule, such as Washington v. Smith, 5 Cir., 1969, 417 F.2d 301, which is squarely in point.

■ Since Hunt was represented by counsel and since there is no attack upon the otherwise voluntary character of his plea of guilty, the contentions with reference to the composition of the grand jury are squarely controlled by the decision of this Court in Colson v. Smith, 5 Cir., 1971, 438 F.2d 1075 [slip opinion dated January 21, 1971]. It was there stated, citing cases:

> "At the outset we advert to the settled rule in this Circuit that a voluntary plea of guilty waives all nonjurisdictional defects, including the right to challenge the construction of the grand jury." [2]

We note, also, the following language in that opinion:

> "We subscribe fully to the principle that guilty pleas are meant to be, and should be, final."

Nor do we have any doubt about the fairness of the hearing in the state court. Hunt was present. He was allowed a continuance at his own request, which he failed to utilize. At the hearing he quoted and cited federal and state court decisions with a facility rarely encountered from those not formally trained in the law. See Williams v. Smith, 5 Cir., 1970, 434 F.2d 592.

On the record now before us the petitioner has failed to demonstrate the denial of any right guaranteed by the United States Constitution. There is thus no justification for our interference with a plea of guilty entered in the state court.

The judgment of the District Court is Affirmed.

JOHN R. BROWN, Chief Judge (dissenting):

While I join with the majority in rejecting petitioner's attack on the racial composition of the grand jury, I cannot subscribe to the holding that the State habeas corpus record provides a sufficiently reliable and complete factual foundation for the final denial of Federal relief. On the contrary, the Tattnall County proceedings seem to me to fall far short of the minimum standards established by both Townsend v. Sain [1] and 28 U.S.C.A. § 2254(d).[2] Accordingly, I

---

2. If consideration of the systematic exclusion argument were not foreclosed, we would have no hesitancy in holding that Hunt failed to make out a case on that point. See Swain v. Alabama, 1965, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759, wherein it was held that purposeful discrimination may not be assumed or merely asserted but must be proven according to federal standards.

1. 1963, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed. 2d 770.
"Even if all the relevant facts were presented in the state-court hearing, it may be that the fact-finding procedure there employed was not adequate for

reaching reasonably correct results. * * * Even where the procedure employed does not violate the Constitution, if it appears to be seriously inadequate for the ascertainment of the truth, it is the federal judge's duty to disregard the state findings and take evidence anew." 372 U.S. at 316, 83 S.Ct. at 759, 9 L.Ed. 2d at 788.

2. "In any proceeding instituted in a Federal court by an application for a writ of habeas corpus * * * a determination after a hearing on the merits of a factual issue, made by a State court * * * shall be presumed to be correct, unless the applicant shall establish or it shall other-

would remand to the District Court for a new evidentiary hearing and findings of fact on petitioner's claim that he was denied (or was ineffectively assisted by) counsel.

Indiscriminate Federal interference with the State fact-finding process is, of course, neither warranted nor desirable, as this Court has affirmed and reaffirmed on numerous occasions.[3] In the belief that it is primarily the responsibility of the States to determine post-conviction claims of denial of Constitutional rights, we have frequently commended and encouraged the States' continuing inventiveness in devising and implementing new techniques for determining and expediting habeas corpus and related proceedings, and we have consistently sought to utilize their post-conviction findings to the fullest extent possible.[4] In cases where such judicial machinery produces a complete, fair and reliable resolution of the conflicting factual issues underlying a claim for Federal relief, State factual determinations must nearly always be accorded finality.

Clearly, however, this is not such a case. Unlike Washington v. Smith, 5 Cir. 1969, 417 F.2d 301 and similar decisions[5] upon which the Court relies, in which we sanctioned the practice of according virtually conclusive weight to State findings of fact grounded wholly or for the most part on depositions or in-

terrogatories, the State habeas hearing here was both procedurally and factually inadequate because Hunt was never afforded any meaningful opportunity to confront, either directly or through interrogatories, the only witness who contradicted his claim. A careful reading of the entire record, far from revealing those indicia of reliability, trustworthiness and completeness demanded by *Townsend*, discloses such a lack of hard, cold facts bearing upon petitioner's denial of counsel claim that the sufficiency of any of the resultant findings must be viewed with skepticism.

In seeking post-conviction relief from both the State and Federal courts Hunt has consistently maintained, under oath and cross-examination, not merely that he was ineffectively represented by his court-appointed counsel, but that he was not represented at all. Of course, the deposition of Mr. Warchak contradicts this contention, yet there remain so many unexplained omissions that the absence of evidence on many points becomes of critical importance.

For example, while we have before us copies of the arrest warrant, indictment, sentence and order of commitment from the State court, we have no copy of the plea, signed or otherwise, upon which the conviction rests. We have no transcript revealing what transpired when the plea was entered. Cf. Boykin v. Ala-

wise appear, or the respondent shall admit—

       *     *     *     *     *

(2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;

(3) that the material facts were not adequately developed at the State court hearing;

       *     *     *     *     *

(6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding;

       *     *     *     *     *

(8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made * * * is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual

determination is not fairly supported by the record."

3. E. g., Boyer v. City of Orlando, 5 Cir., 1968, 402 F.2d 966, 967–968 and cases cited therein; Peters v. Rutledge, 5 Cir., 1968, 397 F.2d 731; Milton v. Wainwright, 5 Cir., 1968, 396 F.2d 214; McGarrah v. Dutton, 5 Cir., 1967, 381 F.2d 161.

4. E. g., as in the case of Texas' post-conviction relief statute, Vernon's Ann.Tex. C.Cr.P. 11.07. *See* State of Texas v. Payton, 5 Cir., 1968, 390 F.2d 261; Waters v. Beto, 5 Cir., 1970, 423 F.2d 934; Woodbury v. Beto, 5 Cir., 1968, 395 F.2d 189; Beto v. Conley, 5 Cir., 1968, 393 F.2d 497.

5. For example, Wiggins v. Smith, 5 Cir., 1970, 434 F.2d 245.

bama, 1969, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274. We have no written order of the Court appointing Mr. Warchak as counsel or providing for his compensation. We have no documents or other court papers bearing Mr. Warchak's signature or otherwise indicating that he was ever present at any stage of the proceedings. In short, the credibility choice resolved against the petitioner was based entirely upon one short, unsigned deposition, the original copy of which neither we nor the District Court have had the benefit of examining.

The deposition itself raises several unanswered questions. The District Court found as a fact (R. 82), as did the State court (R. 9) that Hunt pleaded guilty in September 1956 to one count of robbery by force following an indictment on two counts. Attorney Warchak, however, stated positively that "the plea was most welcome to him on both counts * * * and he entered a plea one after the other" (R. 66) and that "Robert Hunt entered a plea of guilty to both counts" (R. 64). Certainly Mr. Warchak could not be faulted for forgetting the details of a case nearly 12 years old, but since he recalled the facts with sufficient clarity to be able to recount them in detail his inability to describe accurately the character of the plea suggests that the absence of cross-examination may well have been of fundamental significance.

Moreover, although he stated in detail the circumstances leading up to the plea, including descriptions of the violent nature of the robbery and the likelihood of community hostility, Mr. Warchak did not once refer to the evidence—or whether any such evidence existed—linking the defendant with the crime. The complete absence of any reference to facts evidencing guilt as related in the attorney's ex parte deposition was crucial to petitioner's claim, and only through cross-examination could he have clearly established its true significance.

The deficiencies in the deposition are really highlighted by the Court's attempt to bolster the State record by suggesting that Hunt was accorded a meaningful opportunity to counter Mr. Warchak's testimony through the use of written interrogatories.[6] A layman is not a lawyer merely because he talks like one. Gideon v. Wainwright, 1963, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799. An indigent prisoner, denied appointed counsel and lacking formal legal training (and perhaps any formal education at all) can hardly employ such complex procedural devices effectively and intelligently unless he is at least specifically instructed and advised on how he is to proceed.[7]

Although in seeking post-conviction relief a petitioner may not be entitled to counsel as a matter of right,[8] he should at least be afforded a realistic opportunity to subject the opposition's critical testimony to the fire of cross-examination. A realistic opportunity depends on the circumstances, which in this case include a total lack of rudimentary advice by the Judge to the indigent, untrained layman. A hearing that as a practical matter denies this opportunity under the subterfuge of "allowing" written interrogatories provides neither a factually

6. While Mr. Warchak might have been subpoenaed by the petitioner, Hunt was unable to pay the necessary witness fee and mileage allowance required for an in-court confrontation. When Hunt protested that he was a pauper and had no way to pay fees or mileage, the Trial Judge said nothing. The availability of the attorney is another factor that further undercuts the adequacy of the deposition used here.

7. The State judge advised Hunt that "you can mail the questions and he can mail you back the answers" (R. 35). The rec-

ord discloses no other advice or assistance. There is nothing to indicate whether Hunt was ever provided with Mr. Warchak's mailing address or with a copy of the deposition.

8. However, the absence of counsel in post-conviction proceedings is relevant in determining the § 2254(d) adequacy of the State hearing and "is particularly critical when evidentiary procedures which negate the normal civil right of cross-examination are to be followed in the habeas hearing." Walker v. Smith, 5 Cir., 1971, 439 F.2d 392, 394.

adequate nor a procedurally fair record for a Federal court.[9]

Of course, I do not even remotely suggest that petitioner's claim has been established on this record. What is clear to me is that the ambiguities, inconsistencies and gaps in the factual landscape painted by the State habeas record cannot be satisfactorily resolved other than by a full and complete evidentiary hearing.[10] Townsend v. Sain, § 2254(d) and our own decisions [11] demand nothing less.

---

9. We have recognized as much in Walker v. Smith, *supra*, 439 F.2d at 395: "Against the backdrop of this cause in which the claims of an indigent illiterate are denied without a hearing, based upon a record which is supported only by uncrossed written interrogatories to his court-appointed attorney whose competency has been specifically attacked, the trial court should have held an independent hearing to determine whether there was any basis for federal habeas corpus relief." Unless Hunt's conceded literacy somehow distinguishes his incompetency as a lawyer from Walker's, this case is directly in point and should control the disposition of this appeal.

10. I would leave to the Federal District Court the initial determination of whether the further hearing should be held by the Federal Court or in the State court under Georgia's post-conviction relief statute (see note 3, *supra*) subject to stringent instructions that the burden is on the State to insure a fair and complete hearing, Mobley v. Smith, 5 Cir., 1971, 443 F.2d 846, p. 848.

11. Porter v. Sinclair, 5 Cir., 1967, 389 F.2d 277. "A factual hearing is an illusory benefit * * * if it is not a meaningful one." O'Neal v. Smith, 5 Cir., 1969, 413 F.2d 269, 270.