**Thaddeus Francis BRODKOWICZ, Petitioner,**

v.

**Harold R. SWENSON, Warden, Respondent.**

**Civ. A. No. 20119–3.**

United States District Court, W. D. Missouri, W. D.

Feb. 22, 1973.

**180**

Ronald Sokol, Asst. Federal Public Defender, W. D. Mo., Kansas City, Mo., for petitioner.

Neil MacFarlane, Asst. Atty. Gen., State of Missouri, Jefferson City, Mo., for respondent.

## FINAL JUDGMENT DENYING PETITION FOR WRIT OF HABEAS CORPUS

WILLIAM H. BECKER, Chief Judge.

This is a petition for federal habeas corpus by a state convict in custody at the Missouri State Penitentiary. Petitioner is in custody under a judgment and sentence of the Circuit Court of Greene County, State of Missouri, in which he was convicted of first degree robbery. Petitioner was granted leave to proceed in *forma pauperis* by this Court's order to show cause herein dated June 27, 1972.

Petitioner states that he was convicted on his plea of guilty; that his sentence was imposed on the 1st day of March, 1963 for a period of 15 years; that he did not appeal from the judgment of conviction and imposition of sentence; that he filed a motion to vacate his conviction and sentence under Missouri Criminal Rule 27.26, V.A.M.R., in the Circuit Court of Greene County which was denied; that he appealed from the denial of his 27.26 motion to the Supreme Court of Missouri which affirmed the denial of his 27.26 motion on December 13, 1971 in Brodkowicz v. State, *supra*; and that he was represented by counsel at all stages of the proceedings against him and on his post-conviction motion.

On October 6, 1972, the Federal Public Defender was appointed to represent petitioner. A response to the order to show cause, petitioner's traverse and his offer of proof, which was ordered filed on October 6, 1972, have been filed. Also filed herein are (1) transcript on appeal from the denial of petitioner's

Rule 27.26 motion to the Missouri Supreme Court in Brodkowicz v. State, Mo. 1971, 474 S.W.2d 822, and (2) a certified transcript of proceedings on petitioner's plea of guilty and sentencing and certified judgment in State v. Brodkowicz, Criminal Action No. 43464, Circuit Court of Greene County, State of Missouri.

Petitioner seeks an adjudication that his conviction and sentence were imposed upon him illegally in violation of his federal constitutional rights.

Petitioner states the following as grounds for his contention that his conviction and sentence were imposed on him in violation of his federal constitutional rights:

"10(a) Petitioner's plea of guilty was involuntary within meaning of the 14th Amendment of the U. S. Constitution;

"10(b) The trial Court failed to discharge his duties of ascertaining at the time of petitioner's guilty plea whether said plea was a product of coercion, threats or promises;

"10(c) Petitioner was denied effective assistance of counsel at the time of his arraignment, plea and sentencing on plea of guilty;"

As facts in support of the above grounds, petitioner states the following:

"10(a) . . . the plea of guilty by the petitioner was not entirely voluntary, but on the contrary was the product of a combination of coercion, threats, intimidation and promises. This was further complicated by a lack of understanding of petitioner's rights and choices and also by the failure of the trial court and appointed counsel to explain his rights and choices to him.

There is no question in this case; petitioner was beaten on at least two occasions (Tr. 44–46, 53–54). The second occasion was at a time when he was subdued, not offering violence of any form to any one. It was pure and simple punishment. Administered without trial and without any pretense of right. (Tr. 53–54) (See also the concurring opinion of Judge Robert Seiler of the Missouri Supreme Court) After he was beaten, he was physically abused in that he was forced to sleep naked on an iron bed in a 'Dry Cell' during the dead of winter for a period of weeks (Tr. 54). The sheriff and his deputies threatened a continuation of the discomfort and threatment (sic) in the Greene County Jail (Tr. 55).

" . . . Petitioner submits that such treatment is indeed a strong inducement to enter a plea of guilty to get out from under the hand of the sheriff and jailers of Greene County. Regardless of the claimed justification by the sheriff and his deputies, they had no right to inflict punishment by beating. They had no right to inflict physical abuse. A plea of guilty in this circumstance could hardly be said to be voluntary.

"Even though there might be charges which could legally be brought against petitioner, no one had the right to threaten him with such charges in order to coerce a plea of guilty to a separate offense. Yet the sheriff did just that (Tr. 56) and this was intimidation.

"This fear in petitioner was further aggravated by his appointed counsel speaking to him of a possible death sentence. Petitioner was told by his appointed attorney that the offense could result in a possible death (Tr. 124) and life sentence (Tr. 57). They did not explain to him that a death sentence was highly unlikely (Tr. 124). Petitioner was being induced to forego a trial and to enter a plea of guilty out of fear of something which would never take place, and this also was intimidation.

"10(b) 1. He was not asked if he understood the charge. 2. No effort was made to determine if he had been correctly advised. 3. No inquiry was made as to petitioner's education or

even whether he could read or write. 4. He was not asked if he had been induced by any threats or promises or beatings or abuse.

"10(c) It is respectfully submitted that the representation was not effective for the following reasons: 1. There was no effective inquiry into the circumstances of the treatment of petitioner in the Greene County Jail; 2. There was no effective inquiry into the effect of those circumstances on petitioner and its effect in inducing him to plead guilty; 3. There was no effective inquiry into the question of the admissability (sic) of the confession in view of the search of the locked automobile and the interrogation without warning; 4. If counsel believed the sentence was unjust or not fair, they should have moved to vacate the judgment and sentence; 5. There was no effective inquiry at the hearings in view of the trial court's failure to comply with VAMR 25.04."

## CLAIM OF DENIAL OF FULL AND FAIR EVIDENTIARY HEARING IN STATE COURT

In his traverse, petitioner states that he was "denied the chance to give substance to his testimony in respect to the beating and threats of the Greene County Sheriff's Department, because the State refused to have his witness brought in from Federal Prison." Petitioner further states that because of his indigency he "could not pay to have witnesses brought to his hearing" and that it was therefore incumbent upon the State of Missouri to pay the cost of transporting petitioner's "eye-witnesses who could testify to the facts crucial to petitioner's cause." Therefore, as a prerequisite to a decision on the merits of petitioner's contentions based upon facts reported in the state court record (including transcript of testimony, Missouri Supreme Court opinion and all other pertinent documents herein), this Court must determine whether petitioner was afforded a full and fair evidentiary hearing and, if so, whether the state courts reliably found the relevant facts.[1]

In response to this Court's order, petitioner, by his Court appointed counsel, filed herein his offer of proof stating in detail the substance of testimony of Rex Peck (petitioner's "eye-witness") if called on behalf of petitioner. The offer of proof on file herein is substantially identical in factual content to Mr. Peck's statement received in evidence at petitioner's 27.26 hearing and reads as follows:

"1. He is presently an inmate of the United States Penitentiary, Leavenworth, Kansas. He was held in the Greene County Jail in Cell K–3 on the second floor from January 17, 1963 to May 3, 1963, having been charged with burglary. When he was first confined in the Greene County Jail on January 17, 1963, he learned that petitioner was confined in one of two 'dry cells' across the hall from Cell K–3. There was a 6 x 10 inch window in Cell K–3 which was used for visiting and which faced the dry cells across the hall. The other dry cell was located around a corner to the left and he could not observe the door of the second dry cell. A young boy by the name of Danny Unuewi, who was of Hawaiian extraction, was held in the dry cell which he could observe. Petitioner was held in the second dry cell around the corner to the left. While he was in Cell K–3, the jailers would bring petitioner and Unuewi to Cell K–3 to bathe and shave approximately once every two weeks. There was no running water in the dry cells and the furniture consisted of a steel bed without mattress or blankets and a commode which could not be operated from within the cell.

"2. When he first saw petitioner, he was filthy dirty and was in need of

---

1. A detailed summary of the facts adduced at petitioner's Rule 27.26 hearing may be found in Brodkowicz v. State, Mo.1971, 474 S.W.2d 822, at pages 823–826.

a shave and had a cut on his hand. After he had been in the Jail approximately one month, he heard a commotion in Unuewi's cell. He looked out the visiting window of K–3 and observed Earl Plank, a jailer, and Deputy Delbert Starkey in the hallway swearing at Unuewi. This occurred at approximately 7:00 to 8:00 P.M. A few minutes later six deputies came to the area and Unuewi's cell was opened up. Deputy Sheriff Jim Hutchinson and Earl Plank entered Unuewi's cell and while the door was open they beat Unuewi. Plank hit Unuewi repeatedly with a ring of keys.

"3. He then observed Plank and Hutchinson and the other deputies move to the left toward the second dry cell. He then heard petitioner screaming and hollering, and also heard the sound of blows being struck. Plank and Hutchinson then brought petitioner into his view and hit and shoved him into the cell with Unuewi. Both petitioner and Unuewi were nude. Petitioner had welts and bleeding cuts on his back and head and his face and arms were red. He observed Jim Hutchinson hit petitioner in the face with his open hand and petitioner fell back upon the commode in the cell. Earl Plank had a night stick and was attempting to re-enter the dry cell where petitioner and Unuewi were, but other deputies restrained him. Later, Unuewi was observed applying a liquid from a bottle to petitioner's back. Petitioner was then returned to the dry cell around the corner to the left.

"4. The next morning, Sheriff Glen Hendrix came to the two dry cells and swore at petitioner and Unuewi and complained that they were tearing up his jail. Hendrix called Unuewi a God-damned Jap and called petitioner a foreigner and stated that he would 'break them of the habit of coming to the Greene County Jail and raising Hell'. Sheriff Hendrix told petitioner that Judge Green, who was to hear petitioner's case, was his personal friend and that Judge Green would do anything that Hendrix recommended. Hendrix told petitioner that he would recommend that petitioner receive a fifty-year sentence unless he plead guilty and was removed from the jail to the Missouri Penitentiary. Sheriff Hendrix further stated to petitioner that if petitioner did not plead guilty, he would cause the filing of additional charges against petitioner of attempted jail break, destruction of county property, and assault.

"5. Prior to sentencing, petitioner was brought to Cell K–3 to clean up and appear in court. Petitioner advised those present that he had been promised a ten-year sentence, but petitioner did not state who had made the promise. When petitioner returned from court, petitioner advised that he had been sentenced to fifteen years."

Petitioner's formal written "Petition for Writ of Habeas Corpus Ad Testificandum" for the purpose of bringing Rex Peck before the court as a witness for petitioner, was granted by the Greene County Circuit Court but the court denied petitioner's motion to order payment by the State of an amount demanded by the federal authorities to defray the transportation expenses.[2]

2. On this issue the Missouri Supreme Court stated:
"Movant cites no cases requiring the state to pay such expenses and we are aware of none. Nor does the record show that the failure to have the benefit of Peck's personal appearance prejudiced movant. Peck's story, graphically related in his written statement, was admitted in evidence and considered by the court. His testimony delivered personally would have been merely corroborative and cumulative. Since the court rejected movant's testimony and that of witness Ramsey, both of whom appeared personally, it is unlikely in the extreme that by hearing Peck testify in person the court's findings would have been any different." Brodkowicz v. State, *supra*, 474 S.W.2d at page 829.

In Townsend v. Sain, 372 U.S. 293, 313, 83 S.Ct. 745, 757, 9 L.Ed.2d 770, 786, the Supreme Court of the United States held that a federal court must grant an evidentiary hearing to a habeas corpus applicant under the following circumstances:

"If (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing."

Petitioner contends that he was prejudiced by the absence of personal testimony from Rex Peck. However, as is clear from petitioner's offer of proof and from Peck's statement in the state transcript on appeal, the content of Peck's proposed testimony was stated with graphic particularity, was received in evidence at petitioner's hearing on his 27.26 motion and was considered by the trial judge.[3]

Assuming, without so holding, that as a matter of federal Constitutional due process petitioner had the same right in a postconviction hearing to compulsory process to secure attendance of all witnesses he desires, that he would have in a criminal trial, no right of defendant was violated by the failure to advance funds to the federal authorities required for production of witnesses.

◼ A state is not required by the federal Constitution to advance money to secure the attendance of a nonresident witness as a matter of due process. State v. Blount, 200 Or. 35, 264 P.2d 419, 44 A.L.R.2d 711, cert. den. 347 U.S. 962, 74 S.Ct. 711, 98 L.Ed. 1105. The Uniform Act to secure the attendance of witnesses, § 491.400 to § 491.450, RSMo, V.A.M.S., does not provide for advancement of public funds for this purpose. See 21 Am.Jur.2d Witnesses § 348.

◼ Due Process in a criminal prosecution does not require a state to secure the attendance of a nonresident witness whose attendance is demanded by the defendant. See Minder v. Georgia, 183 U. S. 559, at page 562, 22 S.Ct. 224, at page 225, 46 L.Ed. 328 at page 330, where the Supreme Court of the United States said:

"Because it is not within the power of the Georgia courts to compel the attendance of witnesses who are beyond the limits of the state, or because the taking or use of depositions of witnesses so situated in criminal

---

3. The state transcript on appeal shows the following colloquy between the court and counsel for petitioner:

"MR. HASELTINE: If the Court please, we'd like—in view of the testimony—like to make a record on it, and request that the State of Missouri advance the two hundred and seventy-five dollars necessary to get the key witness to this beating at this trial—at this hearing in order that Rex Peck's testimony may be brought before the court in this 27.26 hearing.

"THE COURT: Would you have anything else to offer other than what is in his statement dated August 25, 1970, you made part of your motion I previously overruled?

"MR. HASELTINE: To my knowledge, this is what he will testify to.

I don't know what else he will testify to but this is a statement which I took from Mr. Rex Peck out here at the Medical Center, and it is my opinion he will testify to these facts.

"THE COURT: Do you have any objection, Mr. O'Neal, to this statement of Rex Peck dated August 25, 1970, that Mr. Haseltine has just stated he took from Mr. Peck at the Medical Center here cannot be used in evidence?

\* \* \* \* \*

"MR. O'NEAL: No, I have no objections to the offering of that statement and its admission in evidence.

"THE COURT: With that offer, I will overrule your motion, Mr. Haseltine, and will receive that statement into evidence and consider it."

cases on behalf of defendants is not provided for, and may not be recognized in Georgia, we cannot interfere with the administration of justice in the state on the ground of a violation of the 14th Amendment in these particulars."

■ By analogy even the primary right of the defendant in federal custody to a speedy trial, at which he is entitled to be personally present, requires only that the state make a good faith reasonable effort to secure his presence for a speedy trial. Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607.

■ Directly in point is the rule, in federal habeas corpus to review a state conviction, that requires only that the state make "a good-faith effort" to secure the attendance of a witness for the prosecution before denying the right to confrontation of the witness. Barber v. Page, 390 U.S. 719, 88 S.Ct. 1318, 20 L. Ed.2d 255, a case in which no effort was made to secure attendance of the witness, stating the rule. The *Barber* case contains a lucid explanation of the modern rule requiring a good faith effort to secure the attendance of an *adverse* witness in the trial of a criminal case.

■ In Webber v. United States (C. A.10) 395 F.2d 397 at pages 399 and 400, the rule was applied in a federal prosecution. In the *Webber* case the testimony of unavailable Canadian nationals was secured by written interrogatories. This was held sufficient. The state made a good faith effort to secure attendance of the witness in this case. This satisfies federal standards. It is not certain that, in the absence of exceptional circumstances not present in this case, the federal standard in respect to these postconviction proceedings is as stringent as that of the *Barber* case. But assuming the applicability of the most demanding rule, petitioner has not been denied any federal right in the case at bar because of the use of the written statement of the witness. There is no violation of the federal Constitutional right to compulsory process, to due process or to confront adverse witnesses under these circumstances.

The witness here was not an adverse witness, it should be noted in this connection. As a matter of fact petitioner secured the benefit of the admission of inadmissible hearsay as a result of an unusual effort of the state court to be more than fair to petitioner.

Among procedures held constitutionally adequate for the ascertainment of truth at state postconviction evidentiary hearings are those in which answers to written interrogatories and depositions of *adverse* witnesses are employed in lieu of oral testimony. Washington v. Smith (C.A. 5) 417 F.2d 301; Hunt v. State of Georgia (C.A. 5) 445 F.2d 1228, cert. denied 405 U.S. 1048, 92 S.Ct. 1322, 31 L.Ed.2d 590. Here the witness was not an adverse witness. Under the particular facts of this case, the procedure employed by the state trier of fact was adequate to afford a full and fair postconviction hearing under the rule of Townsend v. Sain, *supra*, and did not "deprive the state evidentiary hearing of its adequacy as a means of finally determining facts upon which constitutional rights depend." Townsend v. Sain, *supra*, 372 U.S. at 316, 83 S.Ct. at 759, 9 L.Ed.2d at 788.

From a review of the files and records in this case, including the transcript on appeal to the Missouri Supreme Court, the official opinion of the Missouri Supreme Court in Brodkowicz v. State, *supra*, the statement of Rex Peck and petitioner's offer of proof, it is concluded that petitioner was afforded a full and fair evidentiary hearing resulting in reliable findings of fact under applicable federal procedural and substantive standards. Under these circumstances this Court may rely on the state records without holding an evidentiary hearing. Townsend v. Sain, *supra*; In re Parker (C.A. 8) 423 F.2d 1021; Meller v. Swenson (W.D.Mo.) 309 F.Supp. 519, affirmed (C.A. 8) 431 F.2d 120, cert. denied 400 U.S. 996, 91 S.Ct. 469, 27 L. Ed.2d 445; Mountjoy v. Swenson (W.D. Mo.) 306 F.Supp. 379.

## CLAIM OF INVOLUNTARY GUILTY PLEA AS THE RESULT OF CRUEL AND UNUSUAL PUNISHMENT AND COERCION

Petitioner's first claim for relief is based upon his contention that he was deprived of due process of law because of an involuntary plea of guilty which was caused by cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution received while imprisoned at the Greene County Jail and by threats made by the Greene County Sheriff.

■ ■ It is clear from the record that petitioner was the victim of cruel and unusual punishment prohibited by the Eighth Amendment.[4] But a finding that petitioner suffered cruel and unusual punishment in violation of his federal constitutional rights under the Eighth Amendment is not, without more, conclusive upon the issue of whether petitioner's plea of guilty was involuntary. Only if his guilty plea was entered as a result of such treatment, which eroded his freedom of choice, would his plea be invalid under the due process clause of the United States Constitution. Cunningham v. Wingo (C.A.6) 443 F.2d 195, 197, cert. denied 404 U.S. 1064, 92 S.Ct. 745, 30 L.Ed.2d 752.

■ After his arrest petitioner signed a written statement admitting his guilt to the charge of first degree robbery. Petitioner stated that the written confession was voluntarily given, that he was told he did not have to give a statement, that any statement that he might give could be used against him in a court of law and that the confession was accurate. Both of petitioner's court appointed attorneys, Mr. Hill and Mr. Beezley, conferred with petitioner in regard to his written confession and were informed by petitioner that the content of the confession was true and voluntarily given. Their conclusion was that the statement could in fact be used against petitioner at trial and so informed him. Counsel made an independent investigation of the facts underlying the charge and found no facts which might cause them to believe that petitioner's confession was involuntary. They advised him of the range of punishment and interviewed the victim of the robbery who stated that he could identify petitioner as one of the persons who had robbed him. At no time did petitioner complain to his appointed counsel of the beatings and other punishment administered by the Greene County jailors, nor was there any evidence of such punishment which was obvious to Mr. Hill or Mr. Beezley during the several occasions when they conferred with petitioner, although they were aware through an unidentified

4. As observed by the Missouri Supreme Court and specifically by Judge Seiler in his concurring opinion, there was "no warrant for the jailers to hold kangaroo court and decide the punishment for assault and attempted jail break . . . ." Jailer Hutchinson admitted that petitioner was spread-eagled against the wall and beaten with a leather belt (Tr. 159, 168) and was forced to remain nude in a dry cell for a period of several weeks during the coldest of Missouri's winter months. There can be no question cruel and unusual punishment was administered. The Supreme Court of the United States in considering standards for determining cruel and unusual punishment has described some of the standards as "the wanton infliction of pain", or conduct which "shocks the most fundamental instincts of civilized man", Louisiana ex rel. Francis v. Resweber, 329 U.S. 459, 67 S.Ct. 374, 91 L.Ed. 422, or a method of punishment which violates "the evolving standards of decency that mark the progress of a maturing society." Trop v. Dulles, 356 U.S. 86, 78 S.Ct. 590, 2 L.Ed.2d 630. In Jackson v. Bishop (C.A.8) 404 F.2d 571, 579, the Court found that "the use of the strap . . . is punishment which, in this last third of the 20th century, runs afoul of the Eighth Amendment; that the strap's use, irrespective of any precautionary conditions which may be imposed, offends contemporary concepts of decency and human dignity and precepts of civilization which we profess to possess; . . . ." See also Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346.

source of petitioner's escape attempts. Counsel testified that it was petitioner's wish to enter a guilty plea which was expressed after the elements of the crime and the possible punishments, including the consequences of a conviction under Missouri's habitual criminal statute, were explained to him. Counsel did not encourage petitioner to plead guilty, nor was petitioner advised by counsel that he would receive a sentence of only ten years if he pleaded guilty.

■ The State had a strong case for conviction against petitioner and petitioner was aware of the strength of the State's case. It further appears that petitioner's decision to plead guilty was based upon his knowing, voluntary, and intelligent decision induced by the strong evidence against him and upon his knowledge of his guilt, and not as a result, in whole or in part, of physical beatings and other punishment he suffered while he was imprisoned in the Greene County Jail, or as a result of any alleged threats of the Greene County Sheriff. Petitioner's failure to advise his attorneys of his treatment in the Greene County Jail indicates that it had no effect upon him in regard to its effect on his plea of guilty. From a careful examination of the record it is found and concluded that petitioner has not been deprived of due process of law secured by the guaranties of the United States Constitution because of an involuntary plea of guilty caused by mistreatment and coercion exerted upon him or by promises by counsel of a lesser sentence than received.[5] The burden of proof is upon petitioner to show an involuntary plea of guilty. He has failed to sustain this burden of proof. Mountjoy v. Swenson, *supra*.

## CLAIM OF DENIAL OF EFFECTIVE ASSISTANCE OF COUNSEL

■ Petitioner's second contention herein is that the assistance of counsel afforded him by his court appointed counsel was inadequate. The record disproves petitioner's contention. Petitioner states that counsel failed to inquire into his treatment at the Greene County Jail, but admits that he did not complain of the treatment to counsel although he had ample opportunity to do so. Counsel credibly testified that during conferences with petitioner there was no outward appearance of beatings or other physical punishment which might have suggested an independent investigation by counsel. Counsel investigated the facts underlying the charges against petitioner, and petitioner's confession and, after interviews with petitioner, soundly concluded the confession would be admissible. The record shows that petitioner was represented by able and diligent counsel who investigated the facts,

5. In regard to petitioner's contention that he did not receive a full and fair evidentiary hearing on his Rule 27.26 motion, it appears that Mr. Peck's testimony as outlined in petitioner's offer of proof, even if accepted as true, would raise no material issue of fact which would afford petitioner the relief that he seeks in light of the evidence showing that petitioner's plea of guilty was not affected by physical punishment or threats. In Procunier v. Atchley, 400 U.S. 446, 451, 91 S.Ct. 485, 488, 27 L.Ed.2d 524, 529, the Supreme Court of the United States stated:

"[A]n applicant for federal habeas corpus is [not] entitled to a new hearing . . . in either the federal or state courts, merely because he can point to shortcomings in the procedures used to decide the issue . . . in the state courts. Our decisions make clear that he must also show that his version of the events, if true, would require the conclusion [that he is entitled to relief.]"

In explaining its reasoning, the Court further stated:

"Unless the result of the habeas corpus proceeding turns on disputed issues of historical fact, a rehearing on the issue . . . would be an exercise in futility, since the applicant for federal habeas corpus would not be entitled to relief even if his allegations of historical fact should be found to be true." Id, 400 U.S., p. 452, 91 S.Ct. 485, p. 488, 27 L.Ed.2d 524, p. 530.

advised petitioner of his rights, informed him of the range of punishment and who acted at all times with professional loyalty in his best interests. It is found that petitioner's claim of denial of effective assistance of counsel is without merit. McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763; Scalf v. Bennett (C.A.8) 408 F.2d 325, cert. denied 396 U.S. 887, 90 S.Ct. 175, 24 L.Ed.2d 161. See also Linehan v. State of Minnesota (C.A.8) 437 F.2d 395, cert. denied 404 U.S. 870, 92 S.Ct. 132, 30 L.Ed.2d 114.

CLAIM OF FAILURE OF TRIAL COURT TO MAKE AN EFFECTIVE INQUIRY TO DETERMINE THE VOLUNTARINESS OF PETITIONER'S PLEA OF GUILTY

 Petitioner's factual contentions made in this regard are that before his plea of guilty was accepted (1) he was not asked if he understood the charge against him, (2) no inquiry was made regarding advice given him, (3) no inquiry was made regarding his education and (4) he was not asked if his guilty plea had been induced by any threats or promises made to him.

 The record of petitioner's plea of guilty and sentencing[6] was filed herein at the Court's request by the State. The record shows that petitioner was asked by the trial judge whether his counsel had explained the charge to him and the possible range of punishment, to which he replied affirmatively. No inquiry was made of petitioner's formal education nor was he asked if his plea of guilty was affected by threats, promises or similar coercion. Although the trial judge did not explain the charge or state the range of punishment, the applicable federal standards in effect at the time of petitioner's plea and sentencing were satisfied by reason of his attorneys' explanation of the charges and possible punishment. See Kotz v. United States (C.A.8) 353 F.2d 312, 314, to the following effect:

"THE DEFENDANT: They have.

"THE COURT: And, after consulting with them and being advised by them, are you ready to answer to the charge pending against you at this time?

"THE DEFENDANT: Yes, sir, I am.

"THE COURT: The State of Missouri charges that Thaddeus Francis Brodkowicz, together with Phillip James Reilly, on or about the 13th day of December, 1962, at the County of Greene and State of Missouri, did then and there wilfully, unlawfully and feloniously make an assault in and upon Roy Stokes, doing business as Stokes Vicker's Service Station, by means of a dangerous and deadly weapon, to wit: a Belgium .25 caliber automatic pistol and a tire tool, and that the said Thaddeus Francis Brodkowicz, together with Phillip James Reilly, did then and there, in the presence of and against the will of the said Roy Stokes, by putting him, the said Roy Stokes, in fear of some immediate injury to his person, feloniously rob, steal, take and carry away, with intent then and there to permanently deprive the said Roy Stokes, doing business as Stokes Vicker's Service, of the use thereof, a sum of good and lawful money of the United States of America, of some value, the property of Roy Stokes, doing business as Vicker's Service Station, which said sum of money the said Thaddeus Francis Brodkowicz, togeth-

6. The record on petitioner's plea and sentencing reads as follows:
"THE COURT: Mr. Brodkowicz, on the 3d day of January of this year [1963] you were present in this Court at which time I appointed Mr. Stephen Hill and Mr. Ted Beezley to represent you and to advise you concerning the charge of First Degree Robbery that is pending against you in this court. Have you had a chance to discuss this matter with Mr. Beezley and Mr. Hill?
"THE DEFENDANT: Yes, sir.
"THE COURT: And have they explained the crime to you and what, under the laws of the State of Missouri, the possible punishments are under that crime?

er with Phillip James Reilly, did then and there take from a cash register located in the service station in the presence of and against the will of the said Roy Stokes.

That is a charge of First Degree Robbery. How do you wish to plead to this charge, guilty or not guilty?

"THE DEFENDANT: Guilty.

"THE COURT: Have you ever been convicted of any crime?

"THE DEFENDANT: Yes, sir; I have."

The court then ordered a presentence investigation and deferred sentencing to March 1, 1963. On that date, petitioner was sentenced to 15 years imprisonment as follows:

"THE COURT: Mr. Brodkowicz, on the 20th day of February you were present in this court with your attorneys, Mr. Hill and Mr. Beezley, at which time you entered a plea of guilty to Robbery in the First Degree. A pre-sentence investigation was ordered and sentence deferred until nine o'clock this morning. I have received the report and have carefully noted its contents. Is there any legal reason why sentence should not be pronounced upon you in accordance with your plea of guilty?

"THE DEFENDANT: No, sir."

Petitioner was then sentenced to 15 years imprisonment at the Missouri State Penitentiary.

"Due process as related to the validity of a plea of guilty, requires that the plea be voluntarily and understandingly made. In practice, Rule 11, Fed. Rules of Crim.Procedure, 18 U.S.C.A. directs that the court not accept such a plea unless it is satisfied that these elements exist. Such understanding as is necessary to give validity to the plea includes knowledge and comprehension, not only as to the nature of the charge, but also as to the penalty which can be imposed. In the language of the Supreme Court, the plea must be made 'with full understanding of the consequences.' Kercheval v. United States, 274 U.S. 220, 223, 47 S.Ct. 582, 583, 71 L.Ed. 1009. See also Pilkington v. United States, 4 Cir., 315 F.2d 204, 210; McCullough v. United States, D.C.Fla., 231 F.Supp. 740, 741.

"But due process is concerned in such a situation only with whether voluntariness and understanding existed. It is not concerned with the manner or means by which they came to exist. Thus, contrary to appellant's contention, his conviction and sentence were not invalid because the court did not itself engage in explanation of the nature and extent of the restraint to which he might be subjected . . . if the fact was that he actually had knowledge and comprehension thereof in relation to his plea, or in relation to the subsequent sentencing proceedings where the circumstances thereof were such that it could rationally be concluded he was permitting this to have operation as to his plea."

Any possible duty of the state trial judge directly to inform the accused of the range of punishment and the nature of the charge, McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418, is not to be retroactively applied before April 2, 1969, the effective date of McCarthy. Halliday v. United States, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16; Minor v. United States (W.D.Mo.) 327 F.Supp. 1206, affirmed (C.A.8) 445 F.2d 637.

The standards of Boykin v. Alabama, 395 U.S. 238, 242, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274, 279, holding that "The record must show, or there must be an allegation and evidence which show, that an accused . . . intelligently and understandingly rejected the offer [of trial by jury]" are satisfied by the evidence in the record, extrinsic to the record of petitioner's plea and sentencing, showing that petitioner voluntarily, knowingly and understandingly entered his plea of guilty, thereby rejecting an offer of trial by jury, independently of any alleged fear of physical abuse and threats. Further, the new

190

standards of *Boykin* are not to be applied retroactively and therefore do not apply to the case at bar. Meller v. Missouri (C.A.8) 431 F.2d 120, cert. denied 400 U.S. 996, 91 S.Ct. 469, 27 L.Ed.2d 445.

CLAIM OF INVOLUNTARY PLEA OF GUILTY BY REASON OF AN UNLAWFUL CONFESSION

 Construed in the light most favorable to him under the rule of Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1086, 10 L.Ed.2d 148, petitioner states a claim that his plea of guilty was involuntary because of an unlawful confession which was given the police allegedly in violation of his federal constitutional rights. Under the controlling decision of McMann v. Richardson, *supra*, however, when on advice of competent counsel the petitioner pled guilty, he waived any objection he might have to an allegedly inadmissible confession. There are no exceptional circumstances in this case to render the rule of the *McMann* case inapplicable. Petitioner's contention is therefore without merit.

In applying all federal standards to the case at bar, upon the facts presented by the record in this case, it is found and concluded that petitioner is not entitled to the relief that he seeks.